**STATE of Missouri, Respondent,**

v.

**Joseph M. COLLINS, Appellant.**

No. 25951.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 8, 2004.

Melinda K. Pendergraph, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Joseph M. Collins ("Appellant") appeals his conviction for one count of statutory sodomy in the first degree, a violation of section 566.062, and two counts of using a child in a sexual performance, violations of section 568.080.[1] Following his conviction by a jury, the trial court sentenced Appellant to life in prison on the charge of statutory sodomy in the first degree, and fifteen years on each of the remaining counts of using of a child in a sexual performance, with the sentences running consecutively. Appellant brings three points of trial court error discussed more fully below.

Viewing the facts in a light most favorable to the jury's verdict, *State v. Crawford*, 32 S.W.3d 201, 204 (Mo.App.2000), the record reveals that from May of 2002 until January of 2003, Appellant resided in Taney County, Missouri, with his then-girlfriend, M.H.[2] Also residing with the couple, were Appellant's ten-year-old son, J.C., and M.H.'s two daughters, ten-year-old A.H. and eleven-year-old J.H. During that period of time, Appellant cared for the three children on the weekends when M.H. was at work.

According to the children, Appellant would take "bad pictures" of them with a Polaroid camera. Appellant would pose the children for pictures; request that they touch and take pictures of each other; touch the children inappropriately; take naked pictures of them; and, take pictures of them while they were in the bathroom. All three children testified there were more pictures taken than those ultimately located by the police and entered into evidence at trial. Further, the children stated that it was difficult to remember who had taken the various pictures.

J.H. testified at trial that in some of the pictures the children were wearing "lingerie or teddies, whatever you want to call them, and [in] some of them [they] didn't have any clothes on." She went on to state that Appellant "would tell [them] to pose" and "to do certain moves" when he was taking pictures of them. She testified that "sometimes" Appellant would make them watch "[n]aked women and naked guys … having sex or giving oral sex" on television. J.H. admitted that she had sexual intercourse with J.C. on numerous occasions, although she was unable to recall

---

1. Appellant was also charged as a prior offender under section 558.016. Statutory references are to RSMo 2000 unless otherwise specified.

2. Due to the sensitivity of the issues in this matter, we use the first names and initials of the parties involved in order to protect the identity of the victims.

how many times it had occurred. She also testified that she saw Appellant cut up some of the photographs and throw them in the trash can.

J.C. testified that not only did Appellant make him take pictures of J.H. and A.H. without their clothes on, but Appellant also told him "he was going to kill [him]" if he told anyone about the photographs. J.C. stated that his father often beat him with "a metal belt and sometimes with a spoon, a wooden spoon . . . on [his] legs and sometimes on [his] butt." After these beatings, Appellant would tell J.C. what kind of clothes to wear to school "[t]o cover up the bruises." He further related that Appellant discussed with him a character named "Captain Underpants." J.C. stated that he often dressed up as "Captain Underpants" and wore only a cape and underwear.

A.H. confirmed Appellant often made them "watch[ ] porno movies." On one particular occasion when J.C. and J.H. were having sexual intercourse, J.C. asked A.H. to take pictures of them; she complied. A.H. stated that Appellant came into the room while the children were having sex, but that he left soon thereafter. According to A.H., on at least two occasions in May of 2002, Appellant "touched [her] under [her] clothes and over [her] clothes" and inserted his finger "[a] little bit" into her vagina.[3]

The record reveals that in January of 2003, A.H. and J.H. told their grandmother, D.B. ("Grandmother"), about the incidents involving Appellant. According to Grandmother, A.H. told her that Appellant "had his son . . . have intercourse with [J.H.]"; that Appellant "lifted her nightie and poked her from the back with his penis out of his pants"; that Appellant

took pictures of them and "had them pose in different ways"; and, that "he also fondled her and put his finger inside of her partially, not all of the way." Thereafter, Grandmother reported the allegations to authorities.

M.H. gave authorities permission to search the residence she shared with Appellant. The search revealed various pornographic magazines, but no photographs of the children were discovered at that time. Although both Appellant and M.H. were arrested, M.H. was later released and was not charged with any crime.

Following her release from jail, M.H. moved to another residence while Appellant was still incarcerated. In preparation for her move, M.H. gave some of Appellant's belongings, including several tools, cans of paint, and a motorcycle, to her brother-in-law, J.N. Several months later, when J.N. opened one of the cans of paint, he discovered numerous cut-up photographs of J.H., J.C., and A.H. inside of the can. J.N. contacted the authorities and the police pieced the photographs back together. The recovered photographs met the descriptions given by the children.

Following a trial on October 6 and 7, 2003, Appellant was convicted on all counts. This appeal followed.

Appellant asserts three points of trial court error. For ease of analysis and consideration, we shall address Appellant's points out of order commencing with his second point on appeal.

■ In his second point, Appellant maintains there was insufficient evidence upon which to find beyond a reasonable doubt that he induced J.H. and J.C. to engage in a sexual performance. *See*

---

**3.** This incident is the source of Appellant's conviction for statutory sodomy in the first degree, pursuant to section 566.062. We note on appeal Appellant does not challenge the sufficiency of the evidence to support that conviction.

§ 568.080.1.[4] He argues certain prior statements made by the children[5] and introduced at trial were inconsistent with the children's actual trial testimony and, as these prior statements were the sole evidence of his guilt, corroboration of their stories was required to support his conviction. Specifically, Appellant points to J.H.'s prior statement that Appellant "made [her] and his son have intercourse ... and he would make us pose with our clothes on or our clothes off...." This statement differed from J.H.'s trial testimony, where she related she was not sure if anyone told her to have sex.

"In determining whether the evidence is sufficient to support a conviction, we view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict and we disregard all contradictory evidence and inferences." *State v. Brock,* 113 S.W.3d 227, 231 (Mo. App.2003). "We look only to whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged." *Id.* It is not this Court's function to reweigh the evidence. *State v. Agee,* 37 S.W.3d 834, 836 (Mo.App.2001).

We disagree with Appellant's assertion that application of the corroboration rule is necessary to the matter at hand. "Generally, in sexual offense cases the victim's testimony alone is sufficient to sustain a conviction, even if uncorroborated." *State v. Sprinkle,* 122 S.W.3d 652, 666 (Mo.App.2003); *see also State v. Griggs,* 999 S.W.2d 235, 241 (Mo.App. 1998); *State v. Sladek,* 835 S.W.2d 308, 310 (Mo. banc 1992). Corroboration is not required unless the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful. *Sprinkle,* 122 S.W.3d at 666. Conflict between the testimony of the victim and other witnesses does not require application of the corroboration rule. *State v. Baker,* 23 S.W.3d 702, 709 (Mo.App.2000). "Conflicts of nonessential nature and issues regarding the credibility of witnesses are matters for the jury to determine." *Id.; State v. Paxton,* 140 S.W.3d 226, 230 (Mo.App.2004). "Missouri courts have recognized that statements of children are inherently more likely to seem contradictory, simply because children are less skilled in articulation." *Griggs,* 999 S.W.2d at 242.

Here, the thrust of Appellant's argument is that there was insufficient evidence in the children's trial testimony to prove that Appellant induced J.C. and J.H. to have sex and, instead, Appellant asserts they engaged in the behavior on their own. In our review we determine, based on the children's trial testimony, there was sufficient evidence to find that Appellant in-

---

4. Section 568.080.1 states:
 1. A person commits the crime of use of a child in a sexual performance if, knowing the character and content thereof, the person employs, authorizes, or induces a child less than seventeen years of age to engage in a sexual performance or, being a parent, legal guardian, or custodian of such child, consents to the participation by such child in such sexual performance.

5. At a pre-trial conference, the State moved to admit statements, pursuant to section 491.075, which A.H., J.H., and J.C. made "to their grandmothers"; to Cathy Bailey, an employee of the Division of Family Services; to Deputy Roger Ellis of the Taney County Sheriff's Department; and, to Mitzi Huffman, a care provider at The Lakes Area Child Advocacy Center. The court determined the children's out-of-court statements could be introduced at trial because they "ha[d] provided sufficient indicia of reliability" to qualify for admission under section 491.075. Further, the children's previous deposition testimony was also introduced at trial.

duced both J.H. and J.C. to engage in sexual intercourse.

The children all related that Appellant took pictures of them; that he told them to take pictures of each other; that he told them how to pose for the pictures; and, that he made them watch pornography. As for the specific incident charged in Counts II and III, both A.H. and J.H. testified that A.H. took a picture of J.H. and J.C. having sex. A.H. stated she took the pictures of J.H. and J.C. because she thought Appellant would want her to take the photographs, although he never specifically asked her to take these particular photographs. A.H. also related that at one time while J.H. and J.C. were having sex, Appellant "stuck his head in [the room]", but did not stop what was going on. J.H. stated that she could not recall if anyone told her to have sex, but that Appellant definitely told her on numerous occasions to pose for pictures. While the children had a difficult time remembering who actually took certain photographs, and who was in the room when certain pictures were taken, their stories were consistent with their respective testimony at trial and with each other's testimony at trial.

While the term "induce" is not defined in section 568.080.1, it has been described as meaning "to move by persuasion or influence" and "to call forth or bring about by influence or stimulation." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, ELEVENTH EDITION 637 (2003). In order to convict Appellant under section 568.080.1, the State was not required to prove that Appellant physically forced or actually participated in the alleged sexual performances of the children. The State had only to prove that he "employ[ed], authorize[d], or induce[d]" the children to engage in such acts. See § 568.080.1. Based on the foregoing detailed trial testimony, there was sufficient evidence to prove that Appellant

influenced and persuaded J.C. and J.H. into having sexual intercourse, and thereby induced both minors to engage in a sexual performance, twice violating section 568.080.1. See State v. George, 717 S.W.2d 857, 859 (Mo.App.1986) (held that the term "sexual performance" as used in section 568.080 refers to any sexual display, either before family or non-family members, and either for profit or not).

With that being said, Appellant also argues that due to the children's prior inconsistent statements, their trial testimony required other corroborating evidence in order to support his conviction of the charged offenses. Appellant urges this Court to follow the reasoning found in State v. Pierce, 906 S.W.2d 729 (Mo.App. 1995), and reverse his convictions. Appellant's reliance on Pierce is misplaced.

In Pierce, the Western District of this Court reversed the defendant's conviction for statutory rape where the victim repeatedly recanted her statement that sex occurred between she and defendant Pierce, and the sole substantive evidence against defendant was the victim's prior out-of-court statement to authorities. Pierce, 906 S.W.2d at 733–36. The Pierce court held defendant's conviction could not be upheld without corroborating evidence in such a situation. Id.

The matter at hand is not factually similar to that found in Pierce and does not require application of the corroboration rule. First, there has been no express recantation of any prior testimony, as in Pierce. Secondly, unlike Pierce where the State's case was based primarily on one single inconsistent statement, the record in this matter contains evidence that Appellant induced the children to engage in a sexual performance. See Pierce, 906 S.W.2d at 734. Lastly, any discrepancies between the children's out-of-court statements and their testimony at trial were

matters for the jury to resolve. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). Point denied.

We turn now to Appellant's third point of trial court error. Appellant asserts the trial court "plainly erred in failing to *sua sponte* declare a mistrial" based on improper remarks by the State in closing argument. He maintains the statements improperly (1) "denigrated defense counsel;" (2) "vouched for the truth of the [S]tate witnesses and the case for guilt;" (3) "argued outside the evidence future dangerousness and injected community or societal pressure to convict;" and, (4) "misstated the law."

Our review for plain error of a trial court's failure to *sua sponte* declare a mistrial is extremely limited. *State v. Brown*, 953 S.W.2d 133, 141–42 (Mo.App. 1997). The declaration of a mistrial is appropriate only in extraordinary circumstances. *State v. Drewel*, 835 S.W.2d 494, 498 (Mo.App.1992). Moreover, "[s]ua sponte action should be exercised only in exceptional circumstances." *Id.* "A conviction will be reversed based on plain error in closing argument only when it is established that the argument had a decisive effect on the outcome of the trial and amounts to manifest injustice." *State v. Edwards*, 116 S.W.3d 511, 536–37 (Mo. banc 2003); *see Brown*, 953 S.W.2d at 141. " 'An assertion of plain error under Rule 30.20 places a much greater burden on a[n] [Appellant] than an assertion of prejudicial error.' " *State v. Reynolds*, 72 S.W.3d 301, 305 (Mo.App.2002) (quoting *State v. Deckard*, 18 S.W.3d 495, 497 (Mo.App.2000)). Plain error "is error that is evident, obvious and clear." *State v. White*, 92 S.W.3d 183, 189 (Mo.App.2002). "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *Id.*

"Plain error relief as to closing argument should rarely be granted and is generally denied without explanation." *State v. Garner*, 14 S.W.3d 67, 76 (Mo.App. 1999). "[I]t is well settled that 'relief should be rarely granted on assertion of plain error to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explanation.' " *State v. Cobb*, 875 S.W.2d 533, 537 (Mo. banc 1994) (quoting *State v. Wood*, 719 S.W.2d 756, 759 (Mo. banc 1986)). Relief should rarely be granted in matters such as this "because, 'in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.' " *State v. Boyd*, 954 S.W.2d 602, 609 (Mo.App.1997) (quoting *Silvey*, 894 S.W.2d at 670).

In Missouri, "we have not adopted a *per se* rule of mandatory reversal in all cases in which objectionable comments are made by a prosecutor." *State v. Roberts*, 838 S.W.2d 126, 131 (Mo.App. 1992). Further, "[c]losing arguments 'must be interpreted with the entire record rather than in isolation.' " *Edwards*, 116 S.W.3d at 537 (quoting *State v. Graham*, 916 S.W.2d 434, 436 (Mo.App.1996)). As previously related, "[w]here a trial court has abused its discretion with respect to improper closing arguments, reversal is warranted only upon showing that the defendant was prejudiced." *State v. Reyes*, 108 S.W.3d 161, 168 (Mo.App.2003). In other words, we will reverse a conviction only if the defendant establishes that the comment had a decisive effect on the jury's determination. *State v. Manwarren*, 139 S.W.3d 267, 274–75 (Mo.App.2004). " 'The burden is on the defendant to demonstrate the decisive effect of the statement.' " *State v. Cruz*, 971 S.W.2d 901, 903 (Mo.

App.1998) (quoting *State v. Girardier,* 801 S.W.2d 793, 796 (Mo.App.1991)).

■ Appellant argues in his first subpoint that the State's closing argument was improper because it "personally attacked" and denigrated defense counsel. As examples of these denigrating remarks, Appellant points to the prosecutor's reference to the photographs of the children and the prosecutor's statement that Appellant's counsel "can [not] get up here and spin his yarn and tell you that these don't exist. They exist." Also, Appellant points to the prosecutor's remark that "I could not believe the way [Appellant's counsel] got up [t]here" and tried to explain the existence of the "Captain Underpants" character. Furthermore, Appellant sets out that the prosecutor improperly remarked on defense counsel's attempts to impeach the children with their prior deposition testimony. In discussing Appellant's counsel's use of the children's depositions, the prosecutor asserted that, "[y]ou depose them once and you depose them the second time and depose them the third time, and then you try to find out 'Well, what did they remember different on this day from that day', and [then] try to make them look like liars." Further, as additional evidence of egregious conduct, Appellant asserts the prosecutor noted that Appellant's counsel "is a good lawyer, kind of like a magician" and that his "good lawyering" was meant "to confuse the jury." Lastly, Appellant shows that in rebuttal closing argument, the prosecutor stated:

> You know, I've been doing this for 30 years. I've never had a defense lawyer get up in front of the jury and say "I agree with [the State's] case. He has proved his case. There is reasonable doubt." However, that's not his job. His job is to get your attention on reasonable doubt. Not once in 30 years has

one defense attorney, 380 jury trials, gotten up in front of a jury, such as yourselves, and said "Boy, I'm—I'm convinced 100 percent that [the State] proved his case." They all 100 percent say "Oh, there's reasonable doubt."

Accordingly, Appellant maintains, based on the foregoing "personal attacks" on his trial counsel, that the State's closing argument was improper and prejudicial toward Appellant.

■ Personal attacks on defense counsel by the prosecutor are "improper and objectionable." *State v. O'Haver,* 33 S.W.3d 555, 563 (Mo.App.2000). The prosecutor may not tell the jury that defense counsel "lied or intentionally attempted to mislead the jury without a basis in the record." *State v. Greene,* 820 S.W.2d 345, 347 (Mo.App.1991). Without a basis in the record, those types of statements are improper as they degrade defense counsel. *Id.* As stated in *State v. Hornbeck,*

> A criminal trial is, and should be, an adversary proceeding. Remarks are made in the heat of closing argument that, on reflection, would best be left unsaid. Sometimes trial counsel will accuse his opponent of misconduct and in effect "try the other lawyer." This should not be done, but within limits, such improprieties do not necessarily require a reversal.

*State v. Hornbeck,* 702 S.W.2d 90, 93 (Mo. App.1985). However, "where statements are 'directed at the tactics or techniques of trial counsel rather than counsel's integrity or character,' the argument is permissible." *Reyes,* 108 S.W.3d at 170 (quoting *O'Haver,* 33 S.W.3d at 563); *see also State v. Ward,* 807 S.W.2d 225, 226 (Mo.App. 1991).

Appellant compares this case to those in which the State argued defense counsel "suborned perjury or fabricated the defense," *State v. Harris,* 662 S.W.2d 276,

277 (Mo.App.1983); "browbeat the witnesses," *State v. Spencer*, 307 S.W.2d 440, 446–47 (Mo.1957); "lied or intentionally attempted to mislead the jury," *Greene*, 820 S.W.2d at 347; and, conspired to commit a crime. *Hornbeck*, 702 S.W.2d at 93. However, in this matter the prosecutor's remarks do not rise to the level confronted by the aforementioned reviewing courts. Rather, the present remarks are more akin to those found in *State v. Ward*, 807 S.W.2d at 226, and *State v. Petary*, 781 S.W.2d 534, 541 (Mo. banc 1989).

In *State v. Ward*, the court found the prosecutor's comments that defense counsel was resorting to trickery were not improper because the comments were merely an attack on defense counsel's methods, rather than an attack on defense counsel's character and integrity. *State v. Ward*, 807 S.W.2d at 226. Further, in *State v. Petary*, the prosecutor commented that defense counsel told the jury a "story" and that the jury would have to be a "magician" to believe defense counsel. *Petary*, 781 S.W.2d at 541. The *Petary* court found the prosecutor's comments to be proper because the comments merely suggested that the defense's theory was not supported by the evidence and, thus, did not constitute an improper attack on the integrity of defense counsel. *Id.*

Here, the prosecutor's remark that Appellant's trial counsel could "spin his yarn" and act as a "magician," were not impermissible personal attacks on Appellant's trial counsel. Rather, the prosecutor's mention of trial counsel's approach to depositions and his "good lawyering," were comments on his trial strategy and techniques, not remarks about his integrity and character. *See Reyes*, 108 S.W.3d at 170. Sub-point denied.

■ Second, Appellant contends the prosecutor vouched for the truthfulness of its witnesses and "suggested that he knew that [Appellant] was guilty." In explaining the variations in the children's trial testimony and their deposition testimony, the prosecutor said:

> Now, let me tell you something ... about prosecutors and police ... There's a way that prosecutors and police can deal from the bottom of the deck, and you wouldn't never [sic] see it. It would be like going to a card shark in Las Vegas, and here's what they do: What prosecutors and police do, when they're not interested in really finding the truth, they get everybody together after a year and a half or two years in a little room, and they all get their stories straight, so when these witnesses take the witness stand they all get up there and they say identical things, trying to convince you that it must be the truth. You use your common sense. Children of their age cannot remember things exactly the same.... That's the way memory works. That's where by delaying a case all of this time it causes variances in testimony, and the variances in testimony is [sic] not evidence that these children are lying. It's evidence that they're human.

The prosecutor further related that he was "seeking justice" and "[j]ustice is the truth in action." He then reiterated that he was "not dealing from the bottom of the deck" and that the "[l]aw-enforcement agencies in this county [were not] dealing from the bottom on the deck." The prosecutor stated they "played it straight [with the jury], because we're interested in truth and justice, truth in action, and that's what only people like you can do...." Appellant asserts these comments improperly personalized the case and suggested that the prosecution had personal knowledge of Appellant's guilt.

■ Improper vouching occurs when the State implies that it has facts

establishing the veracity of its witnesses and the truthfulness of its case that are not before the jury for their consideration. *State v. Wolfe*, 13 S.W.3d 248, 256 (Mo. banc 2000). However, the State may express personal opinions on matters, including guilt, where they are fairly based on the evidence. *State v. Tokar*, 918 S.W.2d 753, 769 (Mo. banc 1996). "The prosecutor may comment on the evidence and the credibility of the defendant's case." *State v. Kreutzer*, 928 S.W.2d 854, 872 (Mo. banc 1996). "Counsel may even belittle and point to the improbability and untruthfulness of specific evidence." *Id.* Indeed, attorneys are allowed substantial latitude in closing argument, and may suggest reasonable inferences to be drawn from the evidence. *State v. Albanese*, 9 S.W.3d 39, 56 (Mo.App.1999). However, "[a] prosecutor may not make statements that imply a knowledge of facts not before the jury." *State v. Shurn*, 866 S.W.2d 447, 460 (Mo. banc 1993). A prosecutor may neither argue facts outside the record nor assert personal knowledge of the facts. *State v. Storey*, 901 S.W.2d 886, 901 (Mo. banc 1995). When a prosecutor argues facts outside the record it is highly prejudicial, because "[a] prosecutor's assertions of personal knowledge ... are 'apt to carry much weight against the accused when they should carry none' because the jury is aware of the prosecutor's duty to serve justice, not just win the case." *Id.* (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)).

▬▬▬ As best we can discern Appellant's argument, he appears to be asserting that the prosecutor improperly vouched for the credibility of the children's

trial testimony and improperly vouched for the truth of the State's case. However, Appellant fails to explain to this Court how any of the comments made by the State during closing argument constituted improper vouching. Additionally, he fails to cite any authority related to the issue of improper vouching.[6] Instead, Appellant relies on cases that deal with closing arguments in which the State included facts outside of the record and improperly personalized its argument. Further, our review of that portion of the State's closing argument at issue reveals the State was merely expressing its opinion fairly drawn from the evidence and was not improperly vouching. *Tokar*, 918 S.W.2d at 769. The State fairly and properly commented on the evidence and did not assert personal knowledge from outside the record. *Storey*, 901 S.W.2d at 901. As we view the remarks made by the prosecutor, he did not urge conviction based on his own assessment of the evidence. The State's assertions that it was "interested in truth and justice" and "seeking justice" were permissible.

Furthermore, "Appellant fails to show this Court how these closing arguments had any decisive effect on the jury, given the overwhelming evidence of his guilt." *Manwarren*, 139 S.W.3d at 275. Appellant has failed to explain how a manifest injustice or a miscarriage of justice resulted from the trial court's failure to intervene *sua sponte* in the State's closing argument, thereby precluding plain error relief. This sub-point is denied.

▬▬▬ Appellant also maintains the State argued outside of the evidence. Specifically, he argues the prosecutor improperly

---

6. " 'We are not required to review points or arguments when they appear without citation of applicable authority.' " *State v. Sullivan*, 935 S.W.2d 747, 760 (Mo.App.1996) (quoting *State v. Conaway*, 912 S.W.2d 92, 95 (Mo.App. 1995)). " 'When no authority is cited and no explanation is given, points relied on are deemed waived or abandoned.' " *Id.* (quoting *Conaway*, 912 S.W.2d at 95).

mentioned Appellant's "future dangerousness" and appealed to the community and societal pressures on the jury to convict sexual offenders.

In its closing argument, the prosecutor remarked that "these predators" go after children "because they're inarticulate, because they're trusting, and they can be groomed." The prosecutor went on to remark that as "step one in the[ir] process, these predators [start by] exposing the children to porno of adults engaging in oral sodomy with one another [in order to] get these kids to accept that kind of behavior as being normal." Thereafter, the prosecutor noted "these perverts" make a game out the sexual abuse, "[t]hat's exactly what they do." The prosecutor went on to comment that, "[Appellant] has all of the indications of being a man who uses kids for sexual reasons. Think about it. 'Well, let's play Captain Underwear. Take your clothes off. Put a cape on', and then it starts."

In addition to the above arguments, the prosecutor commented to the jury,

> You and you alone, are the only ones who can protect the little ones from people like him. You're the only ones. When it comes down to the bottom line, we have to rely on twelve people who have got common sense and realize we can't let these guys walk around and have access to children.

The prosecutor also remarked that "if these kids are going to be saved, they're going to be saved by the grandmas and you." He concluded,

> I submit to you if we walk out of here and we let this guy be in society, if we walk out of here, we're going to have the collective guilt. Maybe next week, maybe the week after that, you're going to ask yourself "I wonder what all [Appellant] is doing today. I wonder—I wonder what he's doing now."

Appellant asserts on appeal that the prosecutor's comments not only refer to facts not in evidence, but also improperly suggest Appellant will be a danger · in the future.

 "A defendant is on trial for the crime he is alleged to have committed in the past, not for what he might do in the future." *Griggs*, 999 S.W.2d at 245. As such, it is not proper for the State to speculate as to future possible acts or conduct of the defendant. *State v. Schaefer*, 855 S.W.2d 504, 507 (Mo.App.1993). The State's speculation about a defendant's propensity to commit future criminal acts is error. *State v. Reynolds*, 997 S.W.2d 528, 533 (Mo.App.1999). "In other words, a defendant has the right to be tried only for what crime he has or has not done, and not for what crime he might do in the future." *Id.* "These rules were designed to preclude argument that 'goes beyond bounds so as to excite and inflame passion or prejudice' toward the defendant." *Schaefer*, 855 S.W.2d at 507 (quoting *State v. Kalter*, 828 S.W.2d 690, 692 (Mo.App. 1992)). Nevertheless, it "is permissible for a prosecutor to argue the necessity for law enforcement, the duty of the jury to convict the defendant to prevent crime and the results to society of a failure to uphold the law." *State v. Willis*, 764 S.W.2d 678, 680 (Mo.App.1988).

We first address Appellant's allegations under this sub-point that the State's references to "these perverts" and "these predators" were improper references to Appellant's future dangerousness. We disagree with Appellant's assertion that this case is akin to *State v. Heinrich*, 492 S.W.2d 109, 116 (Mo.App.1973). In *Heinrich*, the State's repeated "inflammatory and prejudicial" comments improperly characterized the defendant as a personal

threat to the jurors and their families.[7] To the contrary, we find the present situation to be similar to that found in *Schaefer*, 855 S.W.2d 504–09.

In *Schaefer*, the State asked the jury in closing argument, "Now what can you do to safeguard her rights? And the rights of other fifteen year old children who are raped and abused by *the likes of him.*" *Schaefer*, 855 S.W.2d at 507. On appeal, the *Schaefer* court did not find that this was addressing the defendant's future dangerousness, because it did not specifically refer to the defendant, but rather to "the likes of him." *Id.* Specifically, the court set out that, "[t]he prosecutor referred to rapists plurally, which did not unfairly personalize Schaefer in the eyes of the jury." *Id.* Similarly, in the present matter, the State's references did not refer to Appellant in particular; instead, they referred to "these perverts" generally. As such, under the logic applied in *Schaefer*, the contested comments by the State were not improperly referring to Appellant's future dangerousness. The type of argument found in the present case does not unfairly personalize Appellant in the eyes of the jury and has long been permitted by Missouri courts. *Id.; see also State v. Crawford*, 478 S.W.2d 314, 320 (Mo.1972); *State v. McKinney*, 475 S.W.2d 51, 55 (Mo.1971).

Next, we turn to Appellant's argument that the State's comments "were improper because they pressured the jury to convict, not based on the evidence, but to protect society in general." "A prosecutor is permitted to argue general propositions regarding the prevalence of crime in the community, the personal safety of the community's citizens and the jury's duty to uphold the law including inferences regarding the jury's failure to convict and pleas to the jury's common experience."

*State v. Lumpkin*, 850 S.W.2d 388, 395 (Mo.App.1993). Moreover, the law in Missouri has long permitted the State to argue to the jury that the protection of the public rests with them. *State v. Sanders*, 903 S.W.2d 234, 239 (Mo.App.1995). The State may argue that the jury should "send a message" that society will not tolerate certain conduct. *Cobb*, 875 S.W.2d at 537. Further, the State "may urge the jury to consider the effect upon society if the law is not upheld." *State v. Roberts*, 948 S.W.2d 577, 593 (Mo. banc 1997).

In the present case, the prosecutor's comments were not improper. His remarks that the members of the jury were "the only ones who can protect the little ones" and that "if these kids are going to be saved" it was going to be by the jury, did not constitute an impermissible argument. The statements at issue constituted a plea to the jury to uphold the law and convict those responsible for sexually abusing children in their community. *See* parallel discussion in *State v. Gola*, 870 S.W.2d 861, 866 (Mo.App.1993).

The State's argument here was for society's need for strict law enforcement and the application of their "common sense" as jurors. Appellant's characterization of the State's comments is incorrect. As stated previously, the State's comments did not suggest personal danger to the jurors or their families. *See Shurn*, 866 S.W.2d at 464–65. The State properly "stay[ed] within the record" and drew reasonable inferences therefrom. *Id.* "Even if we assume the [State's] comment[s] w[ere] improper, no plain error exists. Given the other evidence against [Appellant] that was presented at trial, it cannot be established that th[ese] comment[s] had a deci-

---

**7.** We also note that *Heinrich,* like the bulk of the cases cited in Appellant's brief, involved a

claim of error that was *preserved* for appellate review, unlike the present claims of error.

sive effect on the jury's determination." *State v. Baller*, 949 S.W.2d 269, 272 (Mo. App.1997). Appellant's third sub-point is denied.

In his final sub-point, Appellant maintains the prosecution misstated the law in its closing argument. In closing argument, the prosecutor remarked that this case was "so serious" that it was "worse than murder, because when somebody is murdered, the victim is gone ... but the crime perpetrated by this man sent three children on maybe a 70–to–80–year journey crippled." The prosecutor also mentioned more than once that these children were going to be "crippled" for the rest of their lives. Additionally, after reading to the jury the instruction relating to deviate sexual intercourse, the prosecutor remarked, "you don't have to have penetration to be guilty of deviate sexual intercourse ... [t]ouching a person's genitals on the outside of their underwear and panties is deviate sexual intercourse...." Appellant argues these statements were contrary to Missouri law and, accordingly, were improper in closing argument.

■ " 'Misstatements of the law are impermissible during closing argument, and a positive and absolute duty rests upon the trial judge to restrain such arguments.' " *O'Haver*, 33 S.W.3d at 564 (quoting *State v. Blakeburn*, 859 S.W.2d 170, 174 (Mo.App.1993)). "Counsel is permitted a wide latitude in his comments, but he cannot argue beyond the evidence, beyond issues drawn by the instructions, or urge prejudicial matters." *State v. Graham*, 916 S.W.2d 434, 436 (Mo.App.1996). "The comment must be interpreted with the entire record rather than in isolation." *Id.* The appellate court should consider the entire record to determine whether the error was sufficiently prejudicial to have tipped the scales and thereby denied de-

fendant a fair trial. *Hornbeck*, 702 S.W.2d at 94.

We first address the prosecutor's remarks that it was his belief that the present case was "worse than murder," and Appellant's assertion that the comment resulted in an improper misstatement of law. We begin by noting that the extent of Appellant's support for his argument on this subject in his appellate brief is limited to the single statement that "[m]urder is classified as the worst offense in Missouri and carries the greatest penalty §§ 565.020 and 565.021."

■ With that being said, we find the prosecutor's opinion that Appellant's crimes were "worse than murder," was an oratorical expression by which the prosecution brought before the jury the enormity of the crimes against the children. Further, the prosecution did not ask the jury to convict based on this belief alone, he also asked them to consider the evidence in the record, together with the instructions given by the trial court. As such, we cannot say that the comments had a decisive effect on the jury's determination of Appellant's guilt. "While overdone and not condoned, the reference was not plain error." *Storey*, 901 S.W.2d at 897. "If a contemporaneous objection had been made to such an argument, it is likely that it would have been sustained. But Appellant is claiming that the trial court erred in not, sua sponte, granting a mistrial, and [Appellant] has not met his heavy burden of proving manifest injustice" in this instance. *State v. Isaiah*, 874 S.W.2d 429, 441 (Mo. App.1994). As such, we hold that there was no miscarriage of justice preliminary to establishing plain error sufficient to reverse his conviction based on this subpoint.

■ Finally, we turn to Appellant's assertion that the State's argument that "touching outside the underwear was suffi-

cient" to convict Appellant of deviate sexual intercourse was "particularly prejudicial." While the State strayed from the definition of deviate sexual intercourse found in section 566.010(1) during the course of its closing argument, the correct definition was restated during trial and during argument and was also set out in the jury instructions. Since the jury was properly instructed as to the elements of the crime detailed in section 566.010(1) and was properly instructed by the trial court "to follow the law as the Court gives it to you," no manifest injustice resulted. *See Edwards*, 116 S.W.3d at 537–38. "A jury is presumed to know and follow the instructions given by the trial court." *State v. Davis*, 122 S.W.3d 690, 693 (Mo.App. 2003). "Although the statements made during closing argument border on the limits of what is proper, this court finds plain error review affords [Appellant] no relief." *State v. Tate*, 850 S.W.2d 385, 387–88 (Mo.App.1993). Sub-point denied.

■ In closing, we note that "[g]enerally, where there is overwhelming evidence of guilt errors concerning the prosecutor's closing argument are not viewed as having a decisive effect on jury deliberations." *State v. Durbin*, 835 S.W.2d 323, 326 (Mo. App.1992). Since the record reveals an abundance of evidence of Appellant's guilt, we cannot say that the challenged remarks, raised for the first time on appeal, demonstrate a strong and clear showing that manifest injustice or a miscarriage of justice resulted. *See State v. Hill*, 808 S.W.2d 882, 888 (Mo.App.1991). Nor did any of the State's comments require the trial court to take remedial measures *sua sponte.* Here, no manifest injustice or miscarriage of justice has been shown. Point denied.

■ Lastly, we turn to Appellant's first point on appeal. Appellant asserts the trial court erred in overruling his motion for judgment of acquittal at the close of the evidence. Appellant posits the judgment finding him guilty of two counts of the class B felony of use of a child in a sexual performance violated his due process rights, in that the State failed to introduce expert testimony regarding "serious emotional injury" as required by section 568.080.2 [8] and section 556.061(27) [9]. Therefore, according to Appellant, he should have been convicted of a Class C felony and not the Class B felony of which he was convicted. The State concedes this point. Here, due to the State's failure to prove that Appellant "inflict[ed] serious emotional injury on the child[ren]" through the use of expert testimony, there was insufficient evidence upon which to premise his Class B felony conviction. *See* § 568.080.2.

■ The general rule regarding the reversal of a conviction based upon insufficiency of the evidence is that "the case is not remanded for a new trial, [but is] remanded to the [trial court] with instructions to discharge the defendant." *State v. West*, 21 S.W.3d 59, 67 (Mo.App.2000). However, "the defendant is not required to

---

**8.** Section 568.080.2 states:

2. Use of a child in a sexual performance is a class C felony, unless in the course thereof the person inflicts serious emotional injury on the child, in which case the crime is a class B felony.

**9.** Section 556.061(27) states:

"Serious emotional injury", an injury that creates a substantial risk of temporary or permanent medical or psychological damage, manifested by impairment of a behavioral, cognitive or physical condition. Serious emotional injury *shall be established by testimony of qualified experts* upon the reasonable expectation of probable harm to a reasonable degree of medical or psychological certainty;

(Emphasis added.)

be discharged in every case overturned for insufficiency of evidence." *State v. Dixon*, 70 S.W.3d 540, 545 (Mo.App.2002). As stated in *State v. O'Brien*:

> Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.[10]

*State v. O'Brien*, 857 S.W.2d 212, 220 (Mo. banc 1993); *see also State v. Cobbins*, 21 S.W.3d 876, 877 (Mo.App.2000); *State v. Granger*, 966 S.W.2d 27, 29–30 (Mo.App. 1998).

Conviction of a Class B felony under section 568.080.2 requires one more additional element than a conviction for the Class C felony, i.e., the finding that "in the course thereof the person inflicts serious emotional injury on the child...." § 568.080.2. Accordingly, in the matter at hand, because the requirements for a conviction of a Class B felony under section 568.080 require "proof of the same or less than all the facts required to establish the commission" of a Class C felony under that section, it is a lesser included offense. *See* § 556.046.1(1). As such, Appellant's conviction should not be discharged, because there was sufficient evidence at trial to support Appellant's convictions of Class C felonies under section 568.080, and the

Class C felony in each count is a lesser included offense of the Class B felony in each count for which Appellant was convicted. *See Dixon*, 70 S.W.3d at 548; *O'Brien*, 857 S.W.2d at 220.

The trial court is directed to enter judgment reflecting a conviction under section 568.080 for two counts of the Class C felony of use of a child in a sexual performance. *See* parallel discussion in *State v. Whalen*, 49 S.W.3d 181, 188 (Mo. banc 2001). Point granted.

The trial court's judgment with respect to the two counts of the Class B felony of the use of a child in a sexual performance is reversed, and the matter is remanded for entry of a judgment and sentence reflecting a conviction for two counts of the Class C felony of the use of a child in a sexual performance. In all other respects, the judgment and sentence of the trial court is affirmed.

PARRISH, P.J., and BATES, C.J., concur.

---

**10.** Section 556.046 outlines the grounds for an offense to be a lesser offense included in a greater offense:

> 1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when
> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
> (2) It is specifically denominated by statute as a lesser degree of the offense charged; or
> (3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.
> 2. The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.