STATE of Missouri, Respondent,

v.

Harvey L. VANLUE, Appellant.

No. 27755.

Missouri Court of Appeals,
Southern District,
Division Two.

March 20, 2007.

Margaret M. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie L. Wan, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Harvey L. Vanlue ("Appellant") appeals his conviction by a jury for one count of the class C felony of possession of a controlled substance, a violation of section 195.202.[1] Appellant was sentenced by the trial court to six years in the Missouri Department of Corrections with the "[s]entence to be served under [s]ection 217.362 ... in the Long Term Substance Abuse Program."[2] Appellant raises one point of trial court error. We affirm in part and remand in part with directions.

Appellant does not challenge the sufficiency of the evidence to support his conviction. Viewing the evidence in the light most favorable to the jury's verdict, *State v. Tinsley*, 143 S.W.3d 722, 726 (Mo.App. 2004), the record shows that on the evening of March 12, 2006, Officer Darin Hickey ("Officer Hickey") of the Joplin Police Department responded to a call regarding a possible armed robbery on Jackson Street in Joplin, Missouri. As he was driving his patrol unit, Officer Hickey encountered Appellant, who matched the description of the robbery suspect, walking east on 10th Street. Officer Hickey rolled the window of his patrol vehicle down and "asked [Appellant] to stop ...," but Appellant responded, "[N]o." Officer Hickey then "opened [his] door to get out to try to make contact with [Appellant]" and told Appellant he "just wanted to talk to him." Appellant again told Officer Hickey "no,"

---

1. All statutory references are to RSMo 2000.

2. Appellant was found to be a prior and persistent offender per sections 558.016 and 557.036.

and "then stopped and turned and walked the other direction." Officer Hickey got out of his vehicle "and said, sir, please come here. Police, come here. And [Appellant] stated no again and took off running." Officer Hickey pursued Appellant. Officer Hickey testified that "initially [Appellant] had his hands outside his pockets running just as a normal person would." Then, Appellant "reached in his right jeans pocket and pulled something out." Officer Hickey "reached for [his] gun because [he] was afraid that it might be a gun ..." and kept his flashlight on Appellant, who was ten to fifteen feet ahead of him. Officer Hickey stated Appellant then "throws something and it bounces off, there's a concrete wall on the east side of the sidewalk there. It bounces off the concrete wall and I see it fall down." He stated he saw Appellant's hand open up "[j]ust as if somebody's throwing something, they've got it in their hand and they're releasing it when they throw it and his hand[ ] opens as it flies out." Officer Hickey stated the thrown object made a "metal ting" sound when it hit the ground. Officer Hickey continued to pursue Appellant and when he passed the area where the object landed he "took [his] flashlight and shined it down on the ground to make sure that it wasn't a weapon." Officer Hickey stated the object "was a metal box with some type of emblem on it, and [he] gave [his] direction of travel over the radio and gave the description of the item that was dropped." Shortly thereafter, Officer Hickey caught up with Appellant and arrested him. Officer Hickey testified that throughout his pursuit of Appellant he had no trouble seeing Appellant as he fled.

After Appellant's arrest, Officer Hickey collected the metal box from the location where Appellant had dropped it. Inside the box there were two small plastic bags containing a white crystallized substance. The white substance field tested positive for methamphetamine. This finding was later confirmed by the Missouri Southern State University Regional Crime Lab, which also found the substance to be methamphetamine.

At trial, Appellant testified on his own behalf. Appellant testified that on the evening of March 12, 2005, he saw the police responding to the robbery call as he walked down the street. He admitted he refused to stop when asked to do so by Officer Hickey and that he ran from him. He stated he ran from Officer Hickey because he had "an incident or two with the City of Joplin before and [he had] been beat by them, you know, whipped" and he "was afraid ... scared." He stated he stopped running from Officer Hickey when he realized other officers were also pursuing him and he decided "this was going to go nowhere so [he] g[a]ve up."

Appellant testified that he did not throw a metal box down during the pursuit by Officer Hickey. Appellant testified he "had an orange soda bottle with [him] ... and [he] threw it" and his "glasses were on ... and [he] threw [his] eyeglasses." He stated he threw the soda bottle and the glasses because "they were interfering with [his] running because every time [he would] bring [his] arm around, they would hit the chain on the glasses." He stated he never put his hands in his pockets during the chase.

At the close of all the evidence, the trial court overruled Appellant's motion for judgment of acquittal. As previously stated, the jury found Appellant guilty of possession of a controlled substance and the trial court sentenced Appellant to six years in the Missouri Department of Corrections with the "[s]entence to be served under [s]ection 217.362 ... in the Long Term Substance Abuse Program." This appeal by Appellant followed.

In his sole point on appeal Appellant asserts the trial court plainly erred by permitting the State in its rebuttal closing argument "to argue that in order to acquit [Appellant], the jury would have to find that Officer Hickey was a liar. Appellant asserts this type of argument violated [Appellant's] rights to due process and a fair trial. . . . " Appellant also maintains that permitting such an argument resulted in manifest injustice "in that the State's argument in effect distorted the burden of proof by suggesting incorrectly what the jury had to find in order to reach a certain verdict."

In his closing argument, Appellant maintained the metal box, discussed previously, was already on the ground and had been kicked by Appellant as he ran by, thus, making the "ting" sound heard by Officer Hickey. Appellant also argued that what Officer Hickey saw him throw was either his soda bottle or his glasses not the metal box. Thereafter, in the State's rebuttal closing argument the following argument was made:

> To believe the defense's argument that you just heard, you've got to think that [Officer Hickey] is a liar. That's what you've got to believe. You know, he's got a lot of motivation to lie, doesn't he? Let's see, I'm going to put my job on the line, I'm going to put my reputation on the line, all this so I can get this guy with two bags of dope.
>
> \* \* \*
>
> Otherwise [Officer Hickey is] lying if that didn't happen and he's not a liar. He's an officer who swore to tell the truth and you all swore to uphold the law.

Appellant did not object to the State's argument at the time it was made.

In our review we discern that Appellant's actual complaint relates to the trial court's failure to *sua sponte* intervene in closing argument to prevent the State from making the type of retaliatory argument that was made. " 'Appellate courts are wary of claims that a trial court erred in failing to . . . *sua sponte* [make objections and rulings] in [closing argument of] a criminal case.' " *State v. Taylor,* 166 S.W.3d 599, 608 (Mo.App.2005) (quoting *State v. Derrick,* 965 S.W.2d 418, 419 n. 1 (Mo.App.1998)) (emphasis added). " 'To convict a trial court of an error, not put forth by the defendant . . . allows an accused to stand mute when incidents unfavorable to him or her occur during trial, gamble on the verdict, and then seek favorable results on appeal.' " *Taylor,* 166 S.W.3d at 608 (quoting *State v. Tilley,* 104 S.W.3d 814, 819 (Mo.App.2003)). Additionally, "review for plain error of a trial court's failure to *sua sponte* [take action in closing argument] is extremely limited." *State v. Collins,* 150 S.W.3d 340, 349 (Mo. App.2004). With that being said, we shall address Appellant's point relied on under the terms in which it was raised.

With that having been said, Appellant concedes that he did not properly preserve this point for appellate review and, therefore, requests plain error review under Rule 30.20.[3] Plain error review is used sparingly and is limited to those cases where there is a strong, clear demonstration of manifest injustice or miscarriage of justice. *State v. Ballard,* 6 S.W.3d 210, 214 (Mo.App.1999). Claims of plain error are reviewed "under a two-prong standard." *State v. Roper,* 136 S.W.3d 891, 900 (Mo.App.2004). "In the first prong, we determine whether there is, indeed, plain error, which is error that is 'evident, obvious, and clear.' " *Id.* (quoting *State v. Scurlock,* 998 S.W.2d 578, 586

---

**3.** All rule references are to Missouri Court Rules (2006).

(Mo.App.1999)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id.* "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice." *Id.* "The outcome of plain error review depends heavily on the specific facts and circumstances of each case." *Id.*

■ " 'Plain error will seldom be found in unobjected closing argument.' " *State v. Vaughn,* 32 S.W.3d 798, 800 (Mo. App.2000) (quoting *State v. Kempker,* 824 S.W.2d 909, 911 (Mo. banc 1992)). "This is because 'alleged errors committed in closing argument do not justify relief under the plain error rule unless they are determined to have a decisive effect on the jury.' " *Vaughn,* 32 S.W.3d at 800 (quoting *State v. Sidebottom,* 753 S.W.2d 915, 920 (Mo. banc 1988)). "Relief should rarely be granted in matters such as this 'because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.' " *State v. Collins,* 150 S.W.3d 340, 349 (Mo. App.2004) (quoting *State v. Boyd,* 954 S.W.2d 602, 609 (Mo.App.1997)). "Further, 'closing arguments must be interpreted with the entire record rather than in isolation.' " *Collins,* 150 S.W.3d at 349 (quoting *State v. Edwards,* 116 S.W.3d 511, 537 (Mo. banc 2003)).

■ "Where a trial court has abused its discretion with respect to improper closing arguments, reversal is warranted only upon showing that the defendant was prejudiced." *State v. Reyes,* 108 S.W.3d 161, 168 (Mo.App.2003). "Prejudice is established by showing 'that there is a reasonable probability that, in the absence of the trial court's abuse, the verdict would have been different.' " *Id.* (quoting *State v. Williams,* 24 S.W.3d 101, 124 (Mo.App. 2000)). As previously related, we will reverse a conviction only if the defendant establishes that the comment had a decisive effect on the jury's determination. *See Vaughn,* 32 S.W.3d at 800. " 'The burden is on the defendant to demonstrate the decisive effect of the statement.' " *Collins,* 150 S.W.3d at 349 (quoting *State v. Cruz,* 971 S.W.2d 901, 903 (Mo.App. 1998)).

■ It has long been held that in closing argument, the State may "make reasonable inferences from the evidence" and may "argue the credibility of witnesses as long as the arguments are based upon the evidence presented at trial." *Vicory v. State,* 81 S.W.3d 725, 731 (Mo.App. 2002). "During closing argument [the State] is permitted to comment on the credibility of defense witnesses, including that of defendant himself." *State v. Taylor,* 831 S.W.2d 266, 269 (Mo.App.1992). "Moreover after a defendant has testified, it is not improper for the [State] in closing argument to comment regarding the lack of evidence supporting defendant's position." *Id.* at 269–70. The State " 'may also comment on the evidence and the credibility of witnesses, even to the point of belittling and/or discussing the improbability of specific testimony.' " *State v. Clayton,* 995 S.W.2d 468, 480 (Mo. banc 1999) (quoting *State v. Clemons,* 946 S.W.2d 206, 229 (Mo. banc 1997)).

■ Additionally, "[t]he State is given considerably more leeway in closing argument when the argument is retaliatory in nature." *Tinsley,* 143 S.W.3d at 735. " 'Even if the argument would otherwise be improper, a prosecutor may retaliate to an issue raised in the closing argument of

Defendant.'" *Id.* (quoting *State v. Matchett,* 69 S.W.3d 493, 500 (Mo.App.2001)).

The present situation is akin to that found in *State v. McClain,* 824 S.W.2d 103 (Mo.App.1992). In *McClain,* the State argued in rebuttal closing argument that in order for the jury to find the defendant not guilty it would have to say to the State's witnesses "you are all lying, folks ... You'd have to say that they're lying.... Look at them. What do they have to prove? They aren't all lying." *Id.* at 106. Defense counsel then objected to the argument on the basis that the State's argument "was a 'misstatement of the law.'" *Id.*

The appellate court found "[t]here was no misstatement of law or distortion of the burden of proof," because the State "has the right to comment on the evidence and the credibility of witnesses from the State's standpoint during closing argument." *Id.*

■ Here, Appellant argued in closing argument that Officer Hickey did not actually see him throw the metal box to the ground. According to Appellant, Officer Hickey may have seen him throw his glasses or a soda bottle to the ground, but Officer Hickey was mistaken or untruthful when he testified that he actually saw the metal box drop from Appellant's hand to the ground.

Thereafter, the State made a retaliatory argument that in order to believe Appellant's version of events, the jury would have to find that Officer Hickey was lying. Like in *McClain,* the argument was permissible because the State is allowed "to comment on the evidence and the credibility of witnesses from the State's standpoint during closing argument." *Id.; see also Taylor,* 831 S.W.2d at 270 (holding that it is "not improper for the [State] in closing argument to comment regarding the lack of evidence supporting defendant's position").

Finally, even if we were to accept Appellant's position that there was improper argument by the State, Appellant has failed to meet his burden of proving the State's comments had a decisive effect on the jury. *Collins,* 150 S.W.3d at 349. The jury in the present matter was instructed on the proper burden of proof to apply in this case as well as the fact that it was their duty to judge the evidence before them. "The jury was instructed properly, and jurors are presumed to follow the court's instructions." *State v. Forrest,* 183 S.W.3d 218, 229 (Mo. banc 2006).

We do not find error "that is 'evident, obvious, and clear.'" *Roper,* 136 S.W.3d at 900 (quoting *Scurlock,* 998 S.W.2d at 586). Appellant has failed to meet his burden of "showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice." *Roper,* 136 S.W.3d at 900. Point denied.

■ Finally, we note Appellant was charged as a prior and persistent offender pursuant to sections 558.016 and 557.036. Prior to trial, the trial court found beyond a reasonable doubt that Appellant "is a prior and persistent offender." At Appellant's sentencing hearing, the trial court sentenced Appellant without mentioning its prior finding that Appellant was a prior and persistent offender. Additionally, the written judgment and sentence fails to reflect that finding.

■ The trial court's authority to determine a criminal defendant's sentence is conferred by sections 558.016 and 557.036 upon a finding that, *inter alia,* the defendant is a prior and persistent felony offender. "Once a trial court finds facts beyond a reasonable doubt showing that a defendant has been found guilty of [two or more prior felonies per section 558.016], it

has no discretion but to find the defendant to be a [prior and persistent] offender." *State v. Jordan*, 947 S.W.2d 95, 97 (Mo. App.1997); *see Johnson v. State*, 938 S.W.2d 264, 266 (Mo. banc 1997). "Having made that prior determination, the enhancement provision is automatic, and a trial court is not obligated to repeat at sentencing a previous finding that the defendant was a prior and persistent offender or even to mention those findings during the sentencing hearing." Jordan, 947 S.W.2d at 97.

Here, the trial court made the necessary findings prior to trial and then failed to mention Appellant's prior and persistent offender status at the sentencing hearing; however, "[t]he sentencing court's failure to again mention it during the formal pronouncement of sentence is irrelevant." *Id.* Also, since the trial court failed to write in its judgment and sentence that Appellant was a prior and persistent offender we determine that the "failure to memorialize accurately the deci-

sion of the trial court as it was announced in open court was clearly a clerical error." *State v. Taylor*, 123 S.W.3d 924, 931 (Mo. App.2004). "Rule 29.12 permits a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission." *State v. Booyer*, 87 S.W.3d 926, 931 (Mo.App.2002). Accordingly, we remand this case with instructions to the trial court to enter a written judgment and sentence reflecting Appellant's prior and persistent offender status.

The judgment and sentence of the trial court is otherwise affirmed.

GARRISON and LYNCH, JJ., concur.