**STATE of Missouri, Respondent,**

v.

**Bill BROWN, Appellant.**

**No. WD 53178.**

Missouri Court of Appeals,
Western District.

Sept. 23, 1997.

Gary E. Brotherton, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for Respondent.

HANNA, Judge.

This is an appeal by the defendant from his convictions for physically and sexually abusing two of his children, B.J. and L.M. The convictions were for two counts of abuse of a child § 568.060, RSMo 1994, one count of rape of a child less than 14 years of age, § 566.030, RSMo Supp.1993, and one count of sodomy of a child less than 14 years of age, § 566.060, RSMo Supp.1993, rendered in the Circuit Court of Boone County, Missouri. The defendant was sentenced as a prior offender, § 558.016, RSMo Cum.Supp.1993, to a total of life plus 14 years in the department of corrections.

During 1992 and 1993, L.M. was seen by Dr. Debra Howenstine, a doctor at the health department, on at least seven occasions. She testified that L.M. (whose date of birth is April 12, 1987) exhibited medical symptoms of sexual and physical abuse. She also examined B.J. (whose date of birth is March 16, 1990). Dr. Howenstine reported her concerns to the police. In response to these reports, Officer Susan Wooderson–Stanley interviewed L.M. several times. In March of 1993, the children were taken into custody by the Division of Family Services. L.M. was placed in foster care with the Ketter family and B.J. was placed with the D'Agostino family. In December of 1993, L.M. was referred to Lynne Dresner for counseling.

At trial, L.M. (who was then nine years old) testified and was subject to cross-examination. B.J. (who was then six years old) was called and asked only to state his age. The defendant did not cross-examine B.J. Additionally, pursuant to the trial court's ruling on admissibility of out-of-court statements under § 491.075, RSMo 1994, Dr. Howenstine, Officer Stanley–Wooderson, Ms. Dresner, Ms. D'Agostino and Ms. Ketter testified as to their own observations as well as the out-of-court statements made to them by the children.

The defendant raises five points on appeal. The first point challenges the sufficiency of the evidence to sustain the convictions in Counts I and II for child abuse. The relevant facts are set forth in more detail below.

The defendant claims that the trial court erred in overruling his motions for acquittal on Counts I and II because there was insufficient evidence to convict beyond a reasonable doubt. Count I charged the defendant with abuse of B.J. in violation of § 568.060 for the act of inflicting "traumatic suffocation".[1] Count II charged the defendant with abuse of a child for the act of striking L.M. with his fist, which resulted in her tooth being broken off at the gum line.

■ Appellate courts look only to whether there is sufficient evidence from which reasonable persons could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *State v. Grim*, 854 S.W.2d 403, *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993); *State v. Nelson*, 818 S.W.2d 285 (Mo.App.1991). In assessing a challenge to the sufficiency of the evidence, the evidence, together with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict. *State v. Grim*, 854 S.W.2d at 405. The credibility of witnesses and conflicts in testimony are questions for the jury. *State v. Nelson*, 818 S.W.2d at 288.

■ With respect to Count I, attempting to suffocate B.J., Dr. Howenstine testified that she examined B.J. when he was not quite three years old. At that examination, she found subconjunctival hemorrhage (submembrane bleeding) in the white parts of his eyes, and pinpoint hemorrhages (petechiae) on his face, ears, behind the ear, scalp and on his eardrums. She also found bruises on his back, but no broken ribs, and internal bleeding or bruises on his neck. Subconjunctival hemorrhages and petechiae are caused by a rapid increase in pressure in the blood vessels, particularly to the blood vessels of the chest cavity. A rapid increase in pressure to these blood vessels increases the pressure in the blood vessels that distribute blood to the head. This increase in pressure in a normally healthy person may be caused by strangling. When a person is strangled or choked, their struggle to breathe causes an increase in the pressure to the chest cavity resulting in petechiae and subconjunctival hemorrhages. Dr. Howenstine testified that her medical examination, and her questions to the defendant and mother, ruled out other underlying medical causes for these symptoms. She concluded that B.J.'s injuries resulted from traumatic suffocation, which either occurred by a rapid violent compression of the chest, or a choking around the neck. Dr. Howenstine reported her concerns to the police, who came to the office and photographed B.J.'s injuries.

In addition to the testimony of Dr. Howenstine, Ms. D'Agostino, B.J.'s foster mother, testified that B.J., in the summer of 1993, had repeated nightmares on a very regular basis. Ms. D'Agostino would find B.J. huddled in the corner of the bed, very distraught and panicked. When she tried to calm him down, B.J. would state: "Daddy Bill choked me. Daddy Bill choked me." On only one occasion had B.J. said that the defendant had hit him in the eye. Ms. D'Agostino also testified that when B.J. made these statements, he seemed to be quite aware of where and who he was. Corroborating these statements were statements made by L.M. L.M.'s counselor, Ms. Dresner, testified that L.M.

---

1. Section 568.060.1, RSMo 1994, provides: "A person commits the crime of abuse of a child if he: (1) Knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old...."

articulated her single most pronounced fear was that she would be choked to death. She repeatedly indicated that the defendant choked her and that he had also choked B.J. and her other brother. Officer Wooderson–Stanley also testified that L.M. stated that the defendant had choked her and had held her head under water and that she had also seen him choke her brothers.

The defendant argues that the state's evidence merely casts suspicion on him, and that it does not rise to the standard of proof beyond a reasonable doubt. The medical evidence and the statements made by L.M. that she had witnessed the defendant choking B.J. pursuant to § 491.075, RSMo—corroborated by two separate witnesses—constitute sufficient evidence from which reasonable persons could have found the defendant guilty beyond a reasonable doubt. *See e.g., State v. Grim,* 854 S.W.2d at 411.

■ The evidence presented with regard to the charge of the defendant hitting L.M. in the mouth with his fist (Count II) came from Dr. Howenstine and Ms. Dresner. Dr. Howenstine testified that she observed L.M. on February 8, 1993, in her waiting room and that L.M.'s teeth appeared to be healthy and intact on that date. Approximately one month later, while examining L.M., she noticed that L.M.'s tooth was completely broken off at the gum line. Further examination revealed an abrasion on the gum above the tooth and a swollen and tender lip. Because L.M. was uncomfortable answering questions regarding how the injury had occurred, Dr. Howenstine did not press the issue. Several months later, during another examination, Dr. Howenstine testified that L.M. was still not ready to talk about how her tooth was broken. A month later, Dr. Howenstine again asked L.M. if she felt like talking about her broken tooth, and L.M. responded by telling her that "My daddy hit me and it came off." She demonstrated this by making her hand into a fist, and striking at her own face. Additionally, Ms. Dresner, L.M.'s counselor, testified that L.M. told her on several occasions that the defendant had hit her and one time stated that he had "punched" her in the mouth.

At trial, during cross-examination, L.M. testified that she remembered having the tooth knocked out, but that she did not know how it happened. She further testified that she didn't think that the defendant ever hit her in the face with his fist, and responded "yes" when asked "If you ever told anybody [that] he did, that would be a lie?". Upon redirect, L.M. testified that she could not remember how her tooth was broken.

The defendant characterizes L.M.'s testimony as an unequivocal recantation of the allegation that he hit her, therefore, "[t]he jury ... should not have been merely free to decide which time [L.M.] was telling the truth, without the benefit of corroborating evidence." *State v. Pierce,* 906 S.W.2d 729, 735 (Mo.App.1995). Furthermore, he criticizes Dr. Howenstine's credentials to assess L.M.'s dental condition and claims the doctor's interview techniques maneuvered L.M. into false accusations. The state responds that L.M. simply could not remember what had happened when she was six years old, three years before the trial, and that Dr. Howenstine never pressed her for information and L.M.'s responses were spontaneous and reliable.

The result is that the defendant maintains that because L.M. had claimed he hit her on the face, and then recanted, the only reliable evidence as to whether he had hit L.M. in the face comes from Dr. Howenstine's hearsay testimony. Citing *State v. Pierce,* he claims his conviction under Count II should be reversed. *Id.* at 735.

*Pierce* involved a conviction that was reversed because it was based solely on a teenage victim's prior inconsistent, uncorroborated statement which she rescinded numerous times. The prior statement was not supported by any corroborating evidence. The *Pierce* court ruled that a conviction cannot be supported where the prior inconsistent statement, which is not corroborated, is the prosecution's sole evidence. *Id.* at 735.

In the matter before us, there is medical evidence that while in the defendant's custody, within a month of observing that the tooth was intact, the child's tooth was broken off at the gum line, that there was an abra-

sion on the gum and that her lower lip was red and swollen. L.M.'s foster mother also testified as to these observations. Dr. Howenstine testified that L.M.'s reticence in telling what had happened to her tooth, even though she was able to recall when the tooth was broken, was cause for concern that the injury was a result of abuse. However, once she did discuss the issue, she was not hesitant in responding to Dr. Howenstine—and even demonstrated how her father hit her.[2] Finally, the fact that the defendant hit her and broke her tooth was supported by L.M.'s statements to her counselor, Ms. Dresner, that the defendant hit her on the face and punching her in the mouth.[3]

The evidence must be viewed by us in the light most favorable to the verdict. *State v. Nelson,* 818 S.W.2d at 288. "It is within the jury's province to believe all, some, or none of any witnesses's [sic] testimony in arriving at its verdict." *Id.* Whether L.M.'s testimony at trial was a "recanting" of her earlier statements to Dr. Howenstine and Ms. Dresner, or if it was an inability to remember the circumstances of three years previous, her prior statement was corroborated by sufficient evidence to conclude that reasonable persons could find the defendant guilty beyond a reasonable doubt. The evidence supporting the convictions for Counts I and II is sufficient. Point denied.

The defendant next argues that the court erred when it admitted L.M. and B.J.'s out-of-court statements to others, pursuant

§ 491.075, RSMo 1994, because there was no support for the court's finding that those hearsay statements were reliable—under the totality of the circumstances—due to the unprofessional and suggestive interview techniques employed by the witnesses relating the victims' statements.[4]

The first question is whether the matter was preserved. The court ruled pre-trial that the statements were admissible. The defendant did not object at trial when the statements were offered.

The defendant argues that the issue was preserved. The court heard evidence, in two pre-trial hearings, with regard to the reliability of out-of-court statements made by B.J. and L.M. to others. The state's witnesses were Ms. D'Agostino (B.J.'s foster mother), Officer Wooderson–Stanley (who conducted an interview with L.M. when charges were brought against the defendant), Ms. Ketter (L.M.'s foster mother), Dr. Howenstine (who examined both B.J. and L.M.) and Ms. Dresner (L.M.'s counselor). After hearing testimony from L.M., the trial court ruled that the hearsay statements—based on the totality of the circumstances in time and content of circumstances—had a sufficient indicia of reliability per § 491.075.[5] At trial, defendant's attorney failed to object to the hearsay evidence being admitted.

The defendant claims that it was unnecessary to object at the time the evidence was offered at trial, in order to preserve this issue, since the trial court had already deter-

**2.** A review of Dr. Howenstine's testimony indicates that she did not attempt to influence L.M., nor did she push her for information. Once she asked a question about what happened, L.M. was allowed to terminate the discussion if she felt uncomfortable.

**3.** As such, L.M.'s statements regarding defendant hitting her and breaking her tooth, were consistent to both Dr. Howenstine (to whom she gestured the act of hitting) and to Ms. Dresner (to whom she consistently told her father hit her, and specifically told that he had "punched" her in the mouth.)

**4.** Section 491.075.1, RSMo 1994, provides that: "A statement made by a child under the age of twelve relating to an offense under chapter 565, 566, or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as

substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
(2) (a) The child testifies at the proceedings; or
(b) The child is unavailable as a witness; or
(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma would result from testifying . . . makes the child unavailable as a witness. . . ."

**5.** Section 491.075, RSMo 1994, comports with the Confrontation Clause and is not facially invalid. See *State v. Wright,* 751 S.W.2d 48, 52 (Mo.1988).

mined that the statements were admissible after the pre-trial hearing was concluded. In support of this contention, the defendant cites *State v. Taylor,* 929 S.W.2d 925 (Mo. App.1996). In *Taylor,* the state closed its case and the prosecutor made what he identified as a motion in limine, to preclude testimony from the defendant's first witness. The next morning, before trial, the court sustained the objection. The defendant made an offer of proof and the court overruled the offer. The Southern District rejected the state's argument that the issue was not preserved because the trial court's ruling was interlocutory only, and that the defendant had failed to offer the evidence at trial. The court held that the defendant had done everything he could reasonably have been expected to do contemporaneous with the witnesses's testimony.

■■■ Pre-trial rulings are interlocutory "because the trial court may wish to reconsider" the evidence at the time it is actually offered at trial. *Id.* at 927. As such, counsel must object to the "erroneous" evidence at trial in order to preserve the issue for appeal. The failure to object to evidence at trial constitutes waiver of that issue for appellate review. *See State v. Howton,* 890 S.W.2d 740 (Mo.App.1995); *State v. Martin,* 852 S.W.2d 844 (Mo.App.1992).

■■■ In order for a reviewing court to rule on an alleged defect at the trial, the objecting party must bring the defect to the court's attention so that the court has the opportunity to take remedial action. *See State v. Jordan,* 751 S.W.2d 68, 75 (Mo.App.1988). Failing to object at trial results in no issue being preserved for appellate review, because a trial court cannot be faulted for failing to take action it was not asked to take. *See State v. Webb,* 583 S.W.2d 536, 538 (Mo. App.1979). Unlike *Taylor,* the trial court

here had several days and the testimony of several witnesses to reconsider its pre-trial ruling. The pre-trial ruling was not contemporaneous with the admission of the testimony.

■■■ Since the issue was not objected to at trial, the matter is reviewable by us only for "plain error" pursuant to Rule 30.20 V.A.M.R. In criminal matters, "plain error" is only applicable if there is a strong showing of "manifest injustice" or a "miscarriage of justice" if not corrected. *State v. Reichert,* 854 S.W.2d 584, 591 (Mo.App.1993).

The standard by which the trial court assessed reliability is contained in § 491.075(1), which provides that a child/victim's statements made out-of-court are admissible as substantive evidence to prove abuse, rape or sodomy. Section 491.075 requires that the court find "in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability...." The defendant asserts that the interview techniques of the witnesses relating the out-of-court statements, resulted in evidence with very low reliability.[6]

■■■ Assessment of the reliability of out-of-court statements pursuant to § 491.075 is a determination within the trial court's discretion. *See State v. Goad,* 926 S.W.2d 152 (Mo.App.1996). This statutory standard has been interpreted by Missouri courts as encompassing when and where the statement was made, whether the statement was a product of leading questions, the time between the offense and the statement, the spontaneity of the statement, the knowledge of the child relative to his or her age, and the consistency of the statements with other statements made at the time.[7]

---

**6.** The state contends that the defendant incorrectly argues for a stringent legal standard of reliability which is only applicable when the child/victim is *unavailable* to testify in court, which was created to avoid Confrontation Clause issues. This standard is inapplicable here, the state continues, because both L.M. and B.J. were available to testify, and subject to cross-examination. L.M. testified, and was subject to cross-examination, and was therefore available. *See State v. Phelps,* 816 S.W.2d 227, 231 (Mo.App.

1991). Furthermore, the state made B.J. available by putting him on the stand. The defendant's attorney declined to examine him and failing to seek a determination from the court that the victim was unavailable. See *State v. Hester,* 801 S.W.2d 695, 697 (Mo.1991).

**7.** See *State v. Redman,* 916 S.W.2d 787 (Mo. 1996); *State v. Wright,* 751 S.W.2d 48 (Mo.1988); *State v. McGuire,* 892 S.W.2d 381 (Mo.App. 1995); *State v. White,* 873 S.W.2d 874 (Mo.App.

We found nothing in the record to indicate that the trial court plainly erred in assessing the reliability of the out-of-court statements under § 491.075 relating to the interview techniques used on the children. With regard to B.J., the record indicates that none of the witnesses interviewed the child. Rather, Dr. Howenstine reported her physical findings, and Ms. D'Agostino reported B.J.'s spontaneous statements and behavior once he arrived at her home. L.M.'s corroborating statements to her counselor, Ms. Dresner, regarding B.J. being choked were neither prompted nor suggested.

With regard to the witnesses who testified as to L.M.'s out-of-court statements, they appear to be elicited with non-suggestive techniques. Dr. Howenstine asked open-ended questions, and did not force L.M. to talk about a subject with which she was uncomfortable. Officer Wooderson–Stanley may have made some interviewing errors,[8] but L.M. was not questioned in a coercive environment, nor was she pushed to respond in any specific way. L.M.'s foster parent, Ms. Ketter, never interviewed her about the abuse, but only testified to L.M.'s own spontaneous statements.

Neither child was questioned in a coercive environment, and it appears that at least most of the witnesses' questioning was either only in response to a spontaneous remark or was left open so as to not lead the child. Although B.J.'s tender age always raises questions of reliability, the court weighed the spontaneous nature of his remarks, the corroborating statements of L.M., and the circumstances of his nightmares to find that the statements would be reliable. Furthermore, although L.M.'s statements were somewhat inconsistent, the inconsistency of L.M.'s statements were used by the defendant for impeachment purposes. As the state points out, L.M. has some consistency, considering the four-year span that elapsed between the time of her injuries and the trial. In light of

our plain error review, the extremely factual analysis involved in this type of determination and the trial court's thoroughness in the pre-trial hearing, we defer to the trial court's discretion. Point denied.

In the defendant's third point, he complains again of plain error allowed by the trial court and that the state acted in bad faith when it allowed Dr. Howenstine's testimony that L.M. once told her that the defendant had inserted a stick into her vagina causing her pain, which did not prove any matter at issue, because the statement was "false" in that L.M. later recanted the statement to Dr. Howenstine. The defendant claims that the state's intentional use of the "false" evidence was a blatant disregard for the truth and was intended to inflame the passions of the jurors in order to divert their attention from the weaknesses in the state's case. The result, if the error is left uncorrected, is manifest injustice.

Defendant's counsel specifically waived any claim of error as to the admission of L.M.'s statements regarding the stick. In the pre-trial hearing to determine the admissibility of the out-of-court statements pursuant to § 491.075, defendant's counsel retracted his argument that the statement about the stick should not be allowed, as he intended to use L.M.'s retraction to impeach Dr. Howenstine. Furthermore, during opening statements, the state did not refer to the allegations about the stick, while the defendant's attorney mentioned the specifics of the statement and its retraction. The trial court cannot now be reviewed for plain error, in failing to take *sua sponte* action, when the defendant's attorney retracted his objection to the evidence. An appellate court cannot convict "a trial court of plain error in failing to exclude evidence after an accused withdrew his objection to it." *State v. Hamilton*, 892 S.W.2d 774, 781 (Mo.App.1995). Point denied.

1994); *State v. Phelps*, 816 S.W.2d 227 (Mo.App. 1991); *State v. Zamora*, 809 S.W.2d 83 (Mo.App. 1991); *State v. Boyer*, 803 S.W.2d 132 (Mo.App. 1991); *State v. Keil*, 794 S.W.2d 289 (Mo.App. 1990); *State v. Robinson*, 782 S.W.2d 694 (Mo. App.1989).

8. For example, Officer Wooderson–Stanley responded to L.M.'s inquiry as to why the defendant might abuse her with the remark that he might have "mental problems" and she only offered L.M. atomically correct dolls that corresponded to the defendant and L.M. during the interview.

Next, the defendant complains about questions asked of the defendant at the close of all of the evidence and before closing argument. He claims that the trial court committed plain error when it asked the defendant whether he was satisfied with trial counsel's performance. The defendant argues that he was denied the right to effective counsel throughout the remainder of the trial because the trial court's inquiry placed the defendant's interests in conflict with his counsel's interests. The defendant further claims that he can show prejudice in that counsel failed to object to the state's improper assertions in closing arguments.

At the close of the state's evidence, the defense counsel indicated that they would not be putting on any evidence. The trial judge, *sua sponte*, asked the defendant several questions regarding the decision not to call any witnesses and whether his counsel had listened to his requests with regard to his defense. Additionally, the trial judge asked him if he had any complaints as to whether his attorney listened to him and his decision not to testify. The defendant responded that he was satisfied with counsel and that his counsel had listened to his requests. The defendant usually responded by nodding in the affirmative. The defendant did state that there were witnesses that he wanted to call, but that counsel said he would not call. The court asked the defense counsel to explain. Counsel told the court that for various reasons of trial strategy or existing state law, he felt that their testimony would neither aid the defendant's case nor be admissible.

The defendant claims that the court's inquiry "pitted [him] against his trial attorney" and the result was that his trial attorney could not assist him during the rest of the trial and, moreover, failed to assist him during closing arguments as evidenced by his attorney's failure to object during closing arguments.

We fail to understand how the court's questions to the defendant about his satisfaction with his counsel created a conflict of interest between attorney and client, particularly considering the defendant's response that he was satisfied with his counsel's performance. It does not follow that trial coun-

sel, after having the defendant questioned as to his effectiveness, would then have a conflict with his client and, as such, would be ineffective. The point is without merit. Point denied.

Finally, the defendant argues that the court plainly erred when it did not declare a mistrial, *sua sponte*, in response to the prosecutor's improper closing arguments. The defendant claims that the prosecutor (1) injected his personal opinion of defendant's guilt, and (2) improperly personalized his argument to the jury, resulting in manifest injustice.

In the context of discussing L.M.'s prior statement that the defendant had hit her and broke her tooth, and then her testimony at trial that he had not hit her and broke her tooth, the prosecutor argued:

> This was over three years ago. But closer, within three months of when these injuries were inflicted on her, closer proximity in time she told [Dr.] Howenstine how it happened. Ladies and gentlemen, because she told her that close proximity in time, I'm telling you beyond a reasonable doubt this defendant did what that little girl said he did. Count II, guilty.

The defendant also asserts that the prosecutor improperly "personalized" the argument to the jury by indicating that the children, if they grow up to understand what happened in the trial, "maybe they'll say to you: 'You were my last line of defense. Thank you for responding to my defense.'"

Our review again is pursuant to Rule 30.20 V.A.M.R. The consideration of assertions concerning closing arguments, under plain error review, is discouraged because the trial court's options are narrowed to uninvited interference with summation. *See State v. Silvey,* 894 S.W.2d 662, 670 (Mo.1995). Additionally, in order to establish a claim of plain error committed during closing arguments, the defendant must make a sound, substantial showing that manifest injustice or a miscarriage of justice will result if relief is not granted. *See State v. Wood,* 719 S.W.2d 756, 759 (Mo.1986). Accordingly, our review for plain error of the trial court's failure to, *sua sponte,* declare a mistrial in

this instance is extremely limited. Neither of the comments made by the prosecutor in closing argument rise to the level of our review in light of the foregoing standard. Point denied.

Judgment of convictions affirmed.

LAURA DENVIR STITH, P.J., and BRECKENRIDGE, J., concur.