**STATE of Missouri, Respondent,**

v.

**Clyde E. GRIFFIN, Appellant.**

**No. WD 63968.**

Missouri Court of Appeals, Western District.

Aug. 22, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 26, 2006.

Application for Transfer Denied Oct. 31, 2006.

finds that the trial court did not plainly err in failing to address the prosecutor's comments during closing arguments. Consequently, the judgment of the trial court is affirmed.

## Factual and Procedural Background

On May 9, 2001, five-year-old L.G. told her kindergarten teacher, Cara Campbell, that her father, Mr. Griffin, "had been doing some nasty things to her." Ms. Campbell took L.G. to the principal's office and informed Dr. Barbara Fields, the principal, of L.G.'s statement. Dr. Fields called L.G. into her office and asked her about her statements to Ms. Campbell. L.G. told Dr. Fields that Mr. Griffin had hurt her. Specifically, L.G. told Dr. Fields that Mr. Griffin had "poked [her] with his stick." When asked where Mr. Griffin hurt her, L.G. pointed to her "privates." Dr. Fields contacted the Division of Family Services (DFS).

Mia Banks, the DFS worker assigned to L.G.'s case, and two law enforcement officers were sent to the school. Ms. Banks spoke with Dr. Fields and interviewed L.G. in a private room with the two police officers present. Ms. Banks asked L.G. about whether she knew the difference between a "good touch" and a "bad touch." L.G. demonstrated that she knew the difference and told Ms. Banks that her father touched her in a bad way. L.G. told Ms. Banks that she sat on her father's lap and that he had sex with her. L.G. also demonstrated to Ms. Banks that Mr. Griffin had touched her vaginal area. When asked what sex was, L.G. was able to demonstrate sex between two anatomically correct dolls. L.G. told Ms. Banks that her clothes were off during these incidents

Dimitra Y. Massey, Kansas City, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

Clyde E. Griffin appeals his convictions for one count of statutory rape in the first degree, under section 566.032, RSMo 2000,[1] three counts of incest, under section 568.020, two counts of statutory sodomy in the first degree, under section 566.062, and two counts of child molestation in the first degree, under section 566.067. Mr. Griffin raises two points on appeal. First, Mr. Griffin claims that he was denied his constitutional right to confront and cross-examine the witnesses against him because the trial court admitted hearsay statements of the child victim. Second, Mr. Griffin claims that the trial court plainly erred in failing to address the prosecutor's closing arguments, in which Mr. Griffin asserts the prosecutor personalized his argument and argued matters not in evidence. This court finds that because Mr. Griffin had the right to cross-examine the victim during her videotaped deposition, Mr. Griffin was not denied his constitutional right to confront and cross-examine the witnesses against him. Further, this court

---

1. All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise indicated.

and that it hurt. Following this interview, L.G. and her brother were taken into protective custody.

Dr. Lisa Schroeder performed a SAFE examination on L.G. Dr. Schroeder did not question L.G. about her allegations. L.G. was cooperative until Dr. Schroeder attempted to perform a genital exam, at which point L.G. became apprehensive. Dr. Schroeder performed a genital exam, but her findings were inconclusive. Dr. Schroeder discovered some redness around the vaginal area and a small amount of vaginal discharge. Dr. Schroeder also noted that L.G. "had a variation in her hymeneal opening that can be a very normal variation." Dr. Schroeder noted, however, that, frequently, examinations of sexually abused children fail to uncover physical signs of abuse. Ultimately, Dr. Schroeder could not conclusively determine whether her findings were the result of abuse or whether there was another cause, such as poor hygiene.

Julie Donelon, a social worker for the Child Protection Center (CPC), also interviewed L.G. This interview was videotaped. L.G. identified the male and female sexual organs. L.G. described Mr. Griffin performing sexual acts on her. L.G. told Ms. Donelon that both she and Mr. Griffin were unclothed when the events took place. L.G. said that Mr. Griffin had sex with her. L.G. indicated that Mr. Griffin touched her private place with his hand over her clothes. She also indicated that Mr. Griffin placed his penis in her vagina, mouth, and anus. L.G. told Ms. Donelon that "pee" had come out of Mr. Griffin's penis. L.G. said that this tasted like "poop." L.G. also said that she couldn't breath when Mr. Griffin placed his penis in her mouth. L.G. said that she told Mr. Griffin to stop. She said that Mr. Griffin told her not to tell anyone or that he would do it again.

DFS placed L.G. in foster care with James and Cheryl Darby. Both foster parents observed inappropriate sexual behavior by L.G. For example, when L.G. first came to the Darby's home, "her hand would go to [Mr. Darby's] groin" when she approached him. L.G. would also frequently attempt to sit in Mr. Darby's lap. When questioned about this, L.G. explained that she always sat on her father's lap. On one occasion, Ms. Darby was told by another girl that L.G. was "on the side of the house with her pants down" and that L.G. was masturbating. When Ms. Darby asked L.G. about this, L.G. told her that her father used to do this to her.

While in the care of the Darbys, L.G. underwent counseling with Deborah Rhinehart, a licensed clinical social worker. In the course of this counseling, L.G. told Ms. Rhinehart that her father had touched her. When asked where she was touched, L.G. pointed "to her private area between her legs." L.G. also told Ms. Rhinehart that her father had touched her with his hand and "with his private part." When Ms. Rhinehart discussed the possibility of L.G. having to testify, L.G. became more anxious and upset and her behavior problems increased.

Mr. Griffin was charged with one count of statutory rape in the first degree, three counts of incest, two counts of statutory sodomy in the first degree, and two counts of child molestation in the first degree. Prior to trial, the State filed a motion to permit L.G. to testify by videotaped deposition in accordance with section 491.680. The State also filed a motion to exclude Mr. Griffin from the deposition proceedings under section 491.685. The trial court found that "significant emotional or psychological trauma would result to child from testifying in [the] personal presence of the defendant" and granted both mo-

tions. On August 21, 2003, L.G.'s testimony was videotaped.

Mr. Griffin's case went to trial on November 12, 2003. At trial, over Mr. Griffin's objection, the trial court permitted the State to introduce L.G.'s videotaped testimony of August 21, 2003, in lieu of live testimony, in accordance with section 491.680.[2] The State filed a motion, in accordance with section 491.075, to introduce L.G.'s statements about Mr. Griffin's sexual abuse that she made to Ms. Campbell, Dr. Fields, Ms. Banks, Ms. Darby, Ms. Rhinehart, Willie Hough,[3] and L.G.'s videotaped interview with Ms. Donelon. Mr. Griffin filed a brief in opposition to the introduction of L.G.'s prior statements regarding Mr. Griffin's sexual abuse and a motion to exclude the statements on the ground that the statements were hearsay and violated Mr. Griffin's "right to confrontation and cross-examination of witnesses" afforded by the United States Constitution and the Missouri Constitution. Mr. Griffin also objected to the introduction of this evidence at trial. The trial court overruled Mr. Griffin's motions and objections and the statements were admitted into evidence.

Mr. Griffin, Mr. Griffin's sister, and Mr. Griffin's sister-in-law testified on Mr. Griffin's behalf. The jury found Mr. Griffin guilty on all charges. Mr. Griffin filed a motion for judgment of acquittal, or in the alternative, for a new trial, which the trial court denied. The trial court sentenced Mr. Griffin to ten years in prison for the charge of statutory rape and ten years in prison for each of the two counts of statutory sodomy in the first degree. The trial court ordered Mr. Griffin to serve his sentence for statutory rape consecutively with his sentence for the first count of statutory sodomy. The trial court ordered Mr. Griffin to serve his sentence for the second count of statutory sodomy concurrently with his sentence for statutory rape and his sentence for the first count of statutory sodomy. On the other five counts, the court followed the recommendation of the jury and ordered Mr. Griffin to pay fines, totaling $8335. Mr. Griffin appeals.

## Jurisdiction

In his brief, Mr. Griffin asserts that his first point on appeal does not challenge the constitutionality of section 491.075, the statute under which the trial court found the hearsay statements of L.G. to be admissible. The State agrees. Nevertheless, this court must examine its jurisdiction, *sua sponte*. *State v. Miller*, 172 S.W.3d 838, 843 (Mo.App. S.D.2005). If Mr. Griffin's claim challenges the validity of a statute and the claim is real and substantial and brought in good faith, then the Missouri Supreme Court would have exclusive jurisdiction. Mo. CONST. ART. V, sec. 3; *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 51 (Mo. banc 1999). Although Mr. Griffin does not expressly challenge the validity of section 491.075, his claim on appeal is that the trial court's admission of L.G.'s hearsay statements, as permitted by section 491.075,[4] violates the

2. Mr. Griffin objected to the introduction of the videotaped testimony on the ground that the State had not proved the videotaped testimony was necessary. The trial court overruled Mr. Griffin's objection and the videotaped testimony was played for the jury. Mr. Griffin does not challenge this ruling on appeal.

3. Willie Hough was identified in the motion as one of L.G.'s foster mothers.

4. Under section 491.075.1:
   A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is ad-

constitutional requirements for the admission of testimonial hearsay statements established by *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). His claim certainly implicates the validity of section 491.075 and, if resolution of the case necessitated addressing the statute's validity, the case would be transferred. "However, the courts should refrain from deciding constitutional issues when the case can be resolved without reaching those issues." *Jackson County Bd. of Election Comm'rs v. Paluka*, 13 S.W.3d 684, 689 (Mo.App. W.D.2000). Because Mr. Griffin's claim can be resolved without reaching the question of the validity of section 491.075, this court has jurisdiction and transfer is unnecessary.

### No Violation of Confrontation Right by Admission of Victim's Statements

In his first point on appeal, Mr. Griffin asserts that the trial court erred in overruling his objections to L.G.'s hearsay statements. He claims the trial court erred in permitting testimony by Ms. Campbell, Dr. Fields, Ms. Banks, Ms. Darby, and Ms. Rhinehart as to the statements L.G. made to them about Mr. Griffin's sexual abuse of her. He also claims the trial court erred in permitting the State to play the CPC video in which Ms. Donelon interviewed L.G. about the abuse. Mr. Griffin argues that the admission into evidence of L.G.'s hearsay statements violated his constitutional right to confront the witnesses against him, as articulated in *Crawford*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. Specifically, Mr. Griffin asserts that *Crawford* permits the admission of testimonial hearsay statements only when the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Under this standard, he argues that L.G.'s hearsay statements were testimonial and, because he did not have a prior opportunity to cross-examine her, were not admissible.

Mr. Griffin is correct that the United States Supreme Court's recent decision in *Crawford* altered the standard under which some hearsay statements are admitted into evidence against a criminal defendant. Previously, under the Supreme Court's decision in *Ohio v. Roberts*, the Confrontation Clause first required a showing that "a hearsay declarant [who was] not present for cross-examination at trial" was "unavailable." 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Upon a showing that the hearsay declarant was unavailable, the hearsay statement was then admissible only if it bore "adequate 'indicia of reliability.'" *Id.* This indicia of reliability could be inferred "where the evidence [fell] within a firmly rooted hearsay exception." *Id.* Otherwise, "the evidence [had to] be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.*

The Supreme Court's decision in *Crawford*, however, altered this analysis.

missible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) (a) The child testifies at the proceedings; or

(b) The child is unavailable as a witness; or

(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

*Crawford* found that, "[w]here nontestimonial hearsay is at issue," the Confrontation Clause permits the "States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. Where testimonial evidence was at issue, however, the Court rejected the indicia-of-reliability standard articulated in *Roberts. Crawford,* 541 U.S. at 61, 124 S.Ct. 1354. The Court found that the Confrontation Clause was intended to be "a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* Thus, the Court held that in order for the testimonial statements of an absent witness to be admitted into evidence, the Confrontation Clause requires two things: "unavailability and a prior opportunity for cross-examination." *Id.* at 68, 124 S.Ct. 1354.

In support of his claim that he was denied his constitutional right to confront and cross-examine the witnesses against him, Mr. Griffin argues that the requirements of *Crawford* govern because L.G.'s hearsay statements that were admitted at trial were testimonial. Mr. Griffin concedes that the first requirement of *Crawford* was met by the trial court's finding that L.G. was unavailable to testify at trial due to significant emotional or psychological trauma to L.G. from testifying in the personal presence of Mr. Griffin. Nevertheless, Mr. Griffin argues that the second requirement that he have a "prior opportunity to cross-examine" L.G. regarding her statements was denied to him. Thus, he argues that L.G.'s statements were improperly admitted under *Crawford.*

The first issue raised by Mr. Griffin's claim is whether L.G.'s hearsay statements were "testimonial." In *Crawford,* the United States Supreme Court chose not to "spell out a comprehensive definition of 'testimonial.'" 541 U.S. at 68, 124 S.Ct. 1354. The Court found that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." [5] *Id. See e.g., United States v. Bordeaux,* 400 F.3d 548, 555–56 (8th Cir. 2005) (statements made by child victim of sexual abuse to "forensic interviewer" testimonial); *In re T.T.,* 351 Ill.App.3d 976, 287 Ill.Dec. 145, 815 N.E.2d 789, 800–04 (2004) (statements made to police officer, state social worker, and examining physician by child victim of sexual assault testimonial). It is not necessary to determine whether L.G.'s hearsay statements admitted at trial are testimonial, however, because the issue of whether Mr. Griffin had a prior opportunity to cross-examine L.G. is dispositive.

Mr. Griffin makes two arguments in support of his claim that he did not have a prior opportunity to cross-examine L.G., as required by *Crawford.* He first asserts that *Crawford* requires that he have an attorney or representative present to cross-examine L.G. at the time L.G. made

---

**5.** In its discussion, the Court also noted "[v]arious formulations of [a] core class of 'testimonial' statements," such as " '*ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' " " 'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' " and " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354 (citations omitted).

the statements that were admitted against him at trial, and he did not. Mr. Griffin also claims that, while his attorney had an opportunity to cross-examine L.G. during her videotaped deposition taken under section 491.680, he was excluded from the deposition proceedings, as permitted by section 491.685. As a result, he argues that he was not able to confront L.G. face-to-face.

With regard to his claim that *Crawford* requires that he be able to cross-examine L.G. at the time she made the out-of-court statements, Mr. Griffin admits that he has no authority for a requirement that the opportunity to cross-examine must be *when the statement was made*. He, instead, argues that this requirement is apparent from a reading of *Crawford*. This court does not agree. In *Crawford*, the Court required that there be a "prior" opportunity to cross-examine the declarant, not that the defendant or the defendant's counsel be present when the statement was made and have the opportunity to confront the declarant at that time. If the Court had intended to rule that the defendant's right to confront and cross-examine a declarant must be at the time the statement is made, it could have easily so stated.

Further, if the Supreme Court intended its ruling to permit admission in evidence of prior testimonial statements of an absent witness only if the defendant was present and had an opportunity to cross-examine the absent witness at the time the statement was made, it would not have included statements made during a "police interrogation" in its definition of "testimonial," the type of "testimonial" hearsay at issue in *Crawford*. 541 U.S. at 40. It is absurd to suggest that the defendant or the defendant's counsel would be present during a police interrogation, much less have an opportunity to cross-examine the

individual being interrogated by the police. The conclusion that the defendant's opportunity to cross-examine the absent witness does not have to be at the time the statement was made is consistent with an earlier Missouri Supreme Court's holding, in *State v. Naucke*, that "it is clear that an opportunity for cross-examination, even if delayed, meets confrontation requirements." 829 S.W.2d 445, 453 (Mo. banc 1992).

Mr. Griffin's next argument is that his attorney's opportunity to cross-examine L.G. when she gave a videotaped deposition did not satisfy the requirements of *Crawford* because he was excluded from the deposition. "Ordinarily a witness is regarded as 'subject to cross-examination' when [she] is placed on the stand, under oath, and responds willingly to questions." *United States v. Owens,* 484 U.S. 554, 561, 108 S.Ct. 838, 844, 98 L.Ed.2d 951 (1988). Here, L.G. appeared in a courtroom, on the witness stand, before the trial judge, the State's attorneys, and Mr. Griffin's trial counsel. Thus, L.G. was "placed on the stand." *Id.* L.G. was asked about the difference between the truth and a lie. She responded that she understood the difference between the truth and a lie and was then sworn in as a witness. Thus, L.G. was placed under oath. *Id.* L.G. then gave direct testimony, from the witness stand, that Mr. Griffin had sexually abused her. A break was taken so that Mr. Griffin could discuss L.G.'s testimony with his trial counsel. After the break, L.G. was cross-examined by Mr. Griffin's attorney. Because subsection 2 of section 491.680 specifically states that the videotaped deposition is to be used "in lieu of [L.G.'s] personal appearance" at trial, Mr. Griffin was on notice that the videotaped deposition constituted his opportunity to cross-examine the declarant. Section 491.680.2. L.G. answered questions on cross-examina-

tion regarding her allegations of sexual abuse and was a generally cooperative witness. Thus, L.G. responded willingly to questions when testifying on the stand, under oath. *Owens,* 484 U.S. at 561, 108 S.Ct. 838. In addition, the jury was able to observe L.G.'s demeanor when her testimony was played at trial. Consequently, L.G. was "subject to cross-examination." *Id.* Nevertheless, Mr. Griffin argues that his exclusion from the videotaped deposition prevented him from confronting the witness against him, L.G., face-to-face, so the videotaped deposition was not a suffi-

cient "prior opportunity to cross-examine" L.G., as required by *Crawford.*

L.G.'s videotaped deposition was taken after the State filed a motion with the trial court to permit L.G. to testify by videotaped deposition in accordance with section 491.680,[6] because L.G.'s therapist believed that L.G. would suffer "significant emotional or psychological trauma" were she "forced to testify in the personal presence of" Mr. Griffin. The State also filed a motion with the court to exclude Mr. Griffin from the deposition proceedings under section 491.685,[7] for the same reason. The

6. Section 491.680 provides:

1. In any criminal prosecution under the provisions of chapter 565, 566 or 568, RSMo, involving an alleged child victim, upon the motion of the prosecuting attorney, the court may order that an in-camera videotaped deposition of the testimony of the alleged child victim be made for use as substantive evidence at preliminary hearings and at trial.

2. If the court finds, at a hearing, that significant emotional or psychological trauma to the child which would result from testifying in the personal presence of the defendant exists, which makes the child unavailable as a witness at the time of the preliminary hearing or trial, the court shall order that an in-camera videotaped deposition of the testimony of the alleged child victim be made for use as substantive evidence at the preliminary hearings and at trial. Such recording shall be retained by the prosecuting attorney and shall be admissible in lieu of the child's personal appearance and testimony at preliminary hearings and at trial, conflicting provisions of section 544.270, RSMo, notwithstanding. A transcript of such testimony shall be made as soon as possible after the completion of such deposition and shall be provided to the defendant together with all other discoverable materials.

3. Upon a finding of trauma as provided for in subsection 2 of this statute, the court may also exclude the defendant from the videotape deposition proceedings in which the child is to testify. Where any such order of exclusion is entered, the child shall not be excused as a witness until the defendant has had a reasonable opportunity to

review the videotape deposition in private with his counsel and to consult with his counsel; and until his counsel has been afforded the opportunity to cross-examine the child following such review and consultation.

4. The court shall preside over the depositions, which shall be conducted in accordance with the rules of evidence applicable to criminal cases.

5. The attorney for the defendant shall have at least two opportunities to cross-examine the deposed alleged child victim: once prior to the preliminary hearing and at least one additional time prior to the trial.

6. Prior to the taking of the deposition which is to be used as substantive evidence at the trial pursuant to sections 491.675 to 491.693, the defendant's attorney shall be provided with such discoverable materials and information as the court may, on motion, direct; shall be afforded a reasonable time to examine such materials; and shall be permitted to cross-examine the child during the deposition.

7. If the defendant is not represented by counsel and if, upon inquiry, it appears to the court that the defendant will be unable to obtain counsel within a reasonable period of time, the court shall appoint the public defender or other counsel to represent the defendant at the deposition.

7. Under section 491.685:

1. On motion of the prosecuting attorney, the court may exclude the defendant from any or all deposition proceedings at which

trial court granted both of the State's motions.[8] Thus, Mr. Griffin was not present in the courtroom at the time L.G. gave testimony for the videotaped deposition that would be used at trial instead of her live testimony.

While *Crawford* set the requirements under which testimonial hearsay may be admitted as evidence in a criminal trial, the case did not directly address testimonial hearsay in child abuse cases where the issue has previously arisen whether a defendant has a right to be present when the child victim gives testimony. That issue was previously addressed in *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990). In *Craig*, the Supreme Court held, similarly to *Crawford*, that "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." 497 U.S. at 845, 110 S.Ct. 3157. *Craig* addressed the constitutionality, under the Confrontation Clause, of a Maryland statute that permitted a child victim to testify at trial outside the presence of the defendant, judge, and jury through one-way closed-circuit television. *Id.* at 840–43, 110 S.Ct. 3157. The child victim was taken to a separate room from the defendant, with the prosecution and the defendant's trial counsel, and was subject to cross-examination. *Id.* at 841–42, 110 S.Ct. 3157. The Court discussed the requirements of the Confrontation Clause and found:

> [T]he right guaranteed by the Confrontation Clause includes not only a "personal examination," but also "(1) insures that the witness will give [her] statements under oath-thus impressing [her] with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making [her] statement, thus aiding the jury in assessing [her] credibility."

*Id.* at 845–46, 110 S.Ct. 3157 (internal citations omitted).

The Court went on to note that the combination "of these elements of confrontation-physical presence, oath, cross-examination, and observation of demeanor by the trier of fact-serves the purposes of the

the child is to testify. However, where any such order of exclusion is entered, the child shall not be excused as a witness until the defendant has had a reasonable opportunity to review the videotape recording in private with his counsel and to consult with his counsel; and until his counsel has been afforded the opportunity to cross-examine the child following such review and consultation.
2. The court may also order, on motion of the prosecuting attorney, during all predisposition procedures, recesses, and post-deposition matters that the child be sequestered from the view and presence of the defendant.
3. In no event shall the child's videotaped testimony be admitted into evidence until the defendant and his attorney have been afforded a reasonable opportunity to review the videotape in private in the presence of each other.

8. Mr. Griffin does not claim violation of his constitutional right of confrontation from the trial court's granting of the motions or from admitting in evidence the videotaped deposition of L.G. in lieu of her live testimony. He claims, instead, that the procedure for taking the videotaped deposition is not a sufficient "prior opportunity to cross-examine" L.G., as required by *Crawford*, so L.G.'s prior hearsay statements to Ms. Campbell, Dr. Fields, Ms. Banks, Ms. Darby, Ms. Rhinehart, and her videotaped interview with Ms. Donelon were erroneously admitted at trial.

Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings." *Id.* at 846, 110 S.Ct. 3157. Thus, *Craig* found that defendants do not have an absolute right to face-to-face confrontation. *Id.* at 850, 110 S.Ct. 3157. Rather, while there was a preference for face-to-face confrontation, the preference could be dispensed with in limited circumstances. *Id.* The Court held that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* In the context of the Maryland statute at issue in *Craig,* the Court held that:

> [I]f the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.

*Id.* at 855, 110 S.Ct. 3157. Thus, the Maryland statutory procedure, which permitted child victims to testify at trial outside the presence of the defendant, judge, and jury, by one-way closed circuit videotape, was declared constitutionally sound. *Id.* at 860, 110 S.Ct. 3157.

The Missouri Supreme Court, in *Naucke,* subsequently addressed "whether the differences between the procedure followed in *Maryland v. Craig* and those followed under [section] 491.680 and [section] 491.685 caused the Missouri 'deposition' procedure to violate confrontation."

829 S.W.2d at 451. The *Naucke* Court noted that the procedure authorized under the Missouri statute, while "probably technically constitut[ing] a deposition, ... is a very special type of deposition requiring specific features that approach the equivalent of in-court testimony." *Id.* at 452. The Court found that it was "difficult, if not impossible, to point to any significant difference in the context of confrontation requirements between [Missouri's videotaped deposition] and the procedure used in *Craig.*" *Id.* Indeed, the Court noted that Justice O'Connor's opinion in *Craig* failed to "articulate any distinction between the deposition procedure (as in Missouri) and the in-camera video testimony procedure (as in Maryland)." *Id.* at 453. Thus, the Court in *Naucke* found that the provisions of section 491.680 and section 491.685 are constitutional under the Supreme Court's decision in *Craig.* *Id.* at 454. The Court, adopting the rationale of *Craig,* further found that the statutes do not violate the right of confrontation contained in the Missouri Constitution. *Id.* at 456. Consequently, the decisions in *Craig* and *Naucke,* have held that the right to confrontation guaranteed by the United States Constitution and the right to confrontation under the Missouri Constitution were not violated by permitting an alleged child victim to give testimony outside the presence of the defendant.

The holdings in *Craig* and *Naucke* predated the Supreme Court's opinion in *Crawford.* Neither the United State Supreme Court nor the Missouri Supreme Court has addressed whether the decision in *Crawford* impacts the United States Supreme Court's holding in *Craig.* Courts in other jurisdictions have considered the issue, however, and found that *Crawford* did not overrule or otherwise abrogate *Craig.* *See e.g., Bordeaux,* 400 F.3d 548, 554–57 (applying *Craig* to hold that the district court's allowance of two-way,

closed circuit television did not satisfy *Craig* and, therefore, was unconstitutional, and applying *Crawford* to child's out-of-court statements to forensic interviewer); *State v. Blanchette*, 134 P.3d 19, 29 (Kan. Ct.App.2006) (rejecting argument that *Crawford* overruled *Craig* ); *State v. Henriod*, 131 P.3d 232, 237 (Utah 2006) (rejecting argument that *Crawford* abrogated *Craig* ); The Missouri Supreme Court's decision in *Naucke* is based on the United States Supreme Court's decision in *Craig* and, with the continued viability of *Craig*, *Naucke* remains viable as well.

Mr. Griffin had an opportunity to cross-examine L.G. through a procedure that the Missouri Supreme Court has held is constitutionally permissible because it is not significantly different from the procedure approved by the United States Supreme Court in *Craig*. Further, because the trial court found that L.G. was an unavailable witness and Mr. Griffin had a sufficient opportunity to cross-examine her prior to trial, the requirements of *Crawford* were met, and Mr. Griffin has failed to show a violation of his rights under the Confrontation Clause. Mr. Griffin's first point is denied.

### No Plain Error in State's Closing Argument

In his second point on appeal, Mr. Griffin claims "[t]he trial court plainly erred in failing to *sua sponte* declare a mistrial or at least admonish the prosecutor during the [S]tate's improper rebuttal closing argument." Specifically, Mr. Griffin argues "that the prosecutor argued matters outside the evidence and personalized his argument to the jury, when the prosecutor called on the jurors to remember how old they were when they learned about sexual intercourse, oral sex, and anal sex."

■■■ Mr. Griffin acknowledges that, because he failed to object to the prosecu-

tor's closing argument, his claim will be reviewed only for plain error. *State v. Anderson*, 79 S.W.3d 420, 439 (Mo. banc 2002). "The consideration of assertions concerning closing arguments, under plain error review, is discouraged because the trial court's options are narrowed to uninvited interference with summation." *State v. Brown*, 953 S.W.2d 133, 141 (Mo.App. W.D.1997). "A claim of plain error alleging errors committed in closing arguments does not justify relief on appeal unless" the defendant proves that the error had "a decisive effect on the jury." *State v. Brooks*, 158 S.W.3d 841, 853 (Mo.App. E.D. 2005). "A prosecutor's statement has a decisive effect if there is 'a reasonable probability that the verdict would have been different had the error not been committed.'" *Id.* (citation omitted). "Additionally, in order to establish a claim of plain error committed during closing arguments, the defendant must make a sound, substantial showing that manifest injustice or a miscarriage of justice will result if relief is not granted." *Brown*, 953 S.W.2d at 141.

Here, Mr. Griffin argues that the trial court plainly erred in failing to *sua sponte* declare a mistrial or otherwise admonish the State during closing arguments. Mr. Griffin cited the following statements in making his argument:

> Ladies and gentlemen, I would like to go through all the evidence with you again. I'd like to go into detail of what happened to [L.G.]. I'm not going to do that, because it's not fair to you.
>
> You should not have to relive what [L.G.] relives every day of her life. That's not fair to you. You did not come into this courtroom this week expecting to get a complete and full education on what it's like to be a sexual assault victim. Every time you watch t.v., every time you read the paper, every time

you listen to the radio, you're going to remember this case, because [on an] almost daily basis, you're going to hear about a small child being raped and sodomized. And, you're going to remember what happened here this week. And, I apologize for that.

I don't—(inaudible due to coughing)

You guys shouldn't have to be here. But, somebody did something. Somebody did something horribly wrong. And, because of that, we have to live with what happened here this week.

. . . .

Let me ask you this. How old were you when you learned about sexual intercourse? How old were you when you learned about oral sex? How old were you when you learned about anal sex? And, not only learned about it, but was able to describe it in detail, describe what it means for an ejaculation, to be able to describe it as tasting like poop, to describe that you can't breathe because your mouth is too full, to describe how it feels to have your insides penetrated. How old were you when you learned that?

I'd say none of us knew that at five years old. [L.G.] does.

■ Mr. Griffin first argues that this portion of the State's closing arguments "improperly implied that Mr. Griffin was doing something wrong and imposing on the jurors by taking his case to trial and requiring the [S]tate to prove" that Mr. Griffin sexually abused L.G. The State, however, argues that these comments were intended to emphasize that, if not for Mr. Griffin's actions, the trial would not have been necessary and the jurors would not have been subjected to the evidence regarding the abuse suffered by L.G. This court agrees with the State. There is no indication that the State's comments were intended to suggest that Mr. Griffin had

done something wrong by defending his case in court. Rather, the comments imply that, if not for the fact that Mr. Griffin sexually abused his daughter, the jury would not have been required to hear the evidence of abuse at trial. Moreover, Mr. Griffin's argument fails to establish "that manifest injustice or a miscarriage of justice will result if relief is not granted." *Brown*, 953 S.W.2d at 141.

■ Mr. Griffin next argues that the above quoted portion of the State's closing argument was improper personalization because it asked "the jurors to place themselves in the position of a sexually abused child experiencing those sexual acts at a very young age." "The use of the word 'you' does not necessarily mean improper personalization." *State v. Wolfe*, 13 S.W.3d 248, 263 (Mo. banc 2000). Here, while the State addresses the jury, it does not ask the jury to "put themselves, or another person, in the victim's shoes." *Jameson v. State*, 125 S.W.3d 885, 891 (Mo.App. E.D.2004). Rather, the State asks the jurors to compare their sexual knowledge at the age of five to L.G.'s sexual knowledge at the age of five in order to determine whether L.G. had advanced sexual knowledge for her age.

■ The State's closing argument is particularly reasonable in light of Mr. Griffin's trial counsel's closing argument. In her closing arguments, Mr. Griffin's trial counsel argued that L.G. lacked the knowledge a sexual abuse victim would likely have. Specifically, Mr. Griffin's trial counsel said:

[L.G.] said [Mr. Griffin] put his penis in her mouth and poop came out. Well, I know poop doesn't come out of a penis. You know poop doesn't come out of a penis. A five-year old kid that's never seen how a penis works before, is not necessarily going to know that.

Here, the State's comments in closing argument draw attention to evidence of L.G.'s advanced sexual knowledge for her age. Thus, the State's closing argument focuses not on personalizing the suffering of the victim, but on L.G.'s advanced sexual knowledge for her age. "When responding to an issue raised in the defendant's closing argument, the prosecutor can go further than the normal bounds of closing arguments." *State v. Davenport,* 924 S.W.2d 6, 12 (Mo.App. E.D.1996). Thus, the State's argument was not improper personalization. In any event, this court does not find that the trial court's failure to *sua sponte* declare a mistrial or otherwise reprimand the State resulted in a "manifest injustice or a miscarriage of justice." *Brown,* 953 S.W.2d at 141. Mr. Griffin's second point is denied.

The judgment of the trial court is affirmed.

All concur.