

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111567 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Nancy W. McLaughlin |
| CALVIN PITTMAN, | ) | |
| | ) | |
| Appellant. | ) | Filed: August 13, 2024 |

### Introduction

Calvin Pittman ("Defendant") appeals the circuit court's judgment after a jury found him guilty of one count of voluntary manslaughter, two counts of armed criminal action, and one count of unlawful use of a weapon. Defendant raises two points on appeal. In both points, Defendant argues the State made comments during closing argument he believes impermissibly shifted its burden of proof to him. Because the State's comments did not impermissibly shift the burden of proof and the jury was properly instructed regarding the State's burden of proof, this Court denies both of Defendant's points. The circuit court's judgment is affirmed.

### Factual and Procedural Background

Defendant does not challenge the sufficiency of the evidence to support his convictions. Defendant was charged by indictment with one count of first-degree murder, unlawful use of a

weapon by shooting a firearm at or from a motor vehicle, and two counts of armed criminal action.[1] The indictment alleged Defendant, "after deliberation, knowingly caused the death of [Victim] by shooting a handgun, a deadly weapon, at an unidentified person and striking [Victim], killing her." Viewing the evidence in the light most favorable to the verdict, the following evidence was adduced at trial:

On November 30, 2020, a police officer ("Officer") was driving southbound on Interstate 170 when he heard a "pop" and encountered two vehicles stopped in the center lane. Officer pulled up behind a white truck and saw a black SUV parked in front of the white truck. The white truck's driver ("Witness") exited the truck and told Officer, "They were shooting at us." Officer approached the black SUV and saw a woman ("Victim") in the driver's seat with her head down and a large spot of blood on her shirt. Officer used his baton to gain access to the vehicle to render aid and discovered Victim had been shot in the forehead. Victim was transported to the hospital but pronounced dead shortly upon arrival.

Witness told police he was traveling southbound on Interstate 170 when he saw "two cars getting on the highway doing some erratic stuff; and [he] came upon a bunch of cars stopped in the middle of the highway" near the Olive Boulevard exit. Witness believed the two cars were engaged in a road rage incident because the cars were "swerving, kind of chasing each other . . . and everybody was honking their horns. . . ." Witness came to an abrupt stop behind Victim's black SUV and saw two vehicles stopped in front of the black SUV: a blue Dodge Dart and a white or silver sedan. Witness saw the blue car's driver, later determined to be Defendant, "kick the door open" to his vehicle, step outside, turn around, and start shooting in Witness' general direction, which was also the direction of Victim's windshield. Witness heard several shots in his

---

[1] Defendant was also charged with one count of tampering which was dismissed before trial.

general direction until he heard "some tires spin out and people leaving" as Officer arrived. Witness described Defendant's race, clothing, and provided a general height description. Several .40 caliber shell casings, fired from two firearms, were recovered within fifty feet of Victim's vehicle.

Another witness ("Doctor") was traveling southbound along Interstate 170 after entering the highway at Ladue Road. Doctor observed a white car and a blue car weaving in and out of traffic and driving erratically as they traveled southbound. Doctor testified he was "sandwiched" between the two cars as they approached the Interstate 64/40 interchange. Near the interchange, Doctor heard shooting and observed the drivers of the white car and blue car shooting at each other until the cars went in opposite directions at the interchange. Doctor called 911 after exiting the highway.

Defendant and his wife ("Wife") testified on Defendant's behalf. Defendant and Wife, along with two of their children, were traveling southbound on Interstate 170 in a blue Dodge Dart to take Wife to a doctor's appointment at St. Mary's Medical Center. They saw a silver car with four doors and tinted windows weaving in and out of traffic "pretty fast." When the traffic began to slow, the silver car "weaved in" to Defendant's lane and nearly struck Defendant's car. Defendant sounded his horn which caused the silver car to merge into the next lane so the silver car was driving very close to the passenger side of Defendant's car. Wife saw the silver car's driver ("Driver") point a gun in her direction. Wife told Defendant about the gun, and said Driver fired four shots at their car, none of which struck the vehicle. As Wife climbed into the backseat to shield their children, Defendant sped up and attempted to drive away. Wife looked up for "a split second" and saw Driver shooting at the back of their car, although none of the bullets struck the vehicle. Defendant was "moving around cars" at approximately 75 mph when he heard more

3

gunshots and saw Driver approaching in his rearview mirror, with his arm out of the window firing a weapon. Defendant slowed down his car, took out his .40 caliber Glock pistol from the car's console, and fired "a couple of shots" at Driver, whose car was "right behind [his] vehicle."

Defendant then brought his car to a complete stop in the middle lane of Interstate 170 at the Olive Boulevard exit. Defendant thought Driver would drive past him, but instead, Driver "literally stopped right behind" his car. Defendant stated he put his arm out of the driver's side window and "emptied the clip" of his gun "until [the] gun clicked." Defendant denied ever exiting his vehicle. He and Driver both drove toward the Interstate 64/40 interchange at which time they went in opposite directions. Defendant proceeded to Wife's doctor's appointment as scheduled. Neither Defendant nor Wife called 911, reported the incident, or relayed what happened because Wife "thought it was over."

Police utilized surveillance videos to locate Defendant's blue Dodge Dart after exiting the highway and traveling to Wife's doctor's appointment. Defendant was arrested four days later, gave a statement to police, and told police where to find the firearm used in the shooting. During the interview, when asked to explain what prompted the incident, Defendant stated, "Obviously I offended the man by being too close while we were riding and he was weaving. You know what I'm saying. I didn't give a fuck."

At trial, Defendant asserted self-defense and defense of others. When Defendant testified, the State attacked his credibility, repeatedly questioning whether he was an honest person by confronting him with discrepancies between his account and those given by Witness, Doctor, and police witnesses. Defendant testified Witness lied when he said he saw Defendant get out of his vehicle, turn around, and fire toward Victim's car. Defendant testified Doctor lied when he said

4

Defendant continued to shoot at Driver as they approached the Highway 64/40 interchange because Defendant had no bullets left after emptying his Glock near the Olive Boulevard exit.

During the State's closing argument, the prosecutor stated, "Now, we'll get to the facts. It's simple. You either believe [Defendant] or you believe the people who have nothing to do with this." Defense counsel objected, "[T]o the form of the argument, shifting the burden." The circuit court held a sidebar to obtain clarity on defense counsel's objection. Defense counsel stated, "You either believe him, which is . . . shifting the burden of proof to . . . [D]efendant." The prosecutor responded, "It's simple. You've got two accounts. You believe one or the other. It's not shifting the burden." The circuit court overruled Defendant's objection. Later, after summarizing Witness' testimony regarding whether there was a gun battle preceding his encounter with Defendant at the Olive Boulevard exit, the prosecutor argued:

> Now, in that instruction, he told you about who has the benefit. What does [Witness] gain? What does he get out of this? He doesn't know this man. Never seen this man. Why would he come in here and lie? So you've got two accounts. Either [Witness] is telling the truth or . . . [D]efendant and . . . [W]ife [are] telling the truth.

Defense counsel objected, "[s]ame objection, as to burden shifting," which the circuit court overruled. The jury found Defendant guilty of the lesser-included offense of voluntary manslaughter, two counts of armed criminal action, and unlawful use of a weapon. The circuit court sentenced Defendant in accordance with the jury's recommendations on all counts to a total of thirty-one years' imprisonment.

This appeal follows.

### Standard of Review

"When a claim regarding closing argument is preserved, the circuit court's ruling is reviewed for an abuse of discretion[.]" *State v. Craft*, 669 S.W.3d 719, 728 (Mo. App. E.D. 2023);

5

*see also State v. Holmsley*, 554 S.W.3d 406, 410 (Mo. banc 2018). "An abuse of discretion occurs when a defendant is prejudiced such that 'there is a reasonable probability that the outcome at trial would have been different if the error had not been committed.'" *Holmsley*, 554 S.W.3d at 410 (quoting *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2010)). Defendant bears the burden of demonstrating the prosecutor's argument had a decisive effect on the jury. *State v. Johnson*, 284 S.W.3d 561, 573 (Mo. banc 2009). "The entire record is considered when interpreting a closing argument, not an isolated segment." *Id.*

## Discussion

*Points I and II: Burden Shifting Comments During State's Closing Argument*
*Party Positions*

Because both of Defendant's points address the same type of error, they will be analyzed together. In Points I and II, Defendant argues the circuit court erred in overruling his objections to the prosecutor's closing argument asserting the jury must believe either Defendant or the State's witnesses because those comments impermissibly shifted the burden of proof to Defendant. Defendant argues the prosecutor's comments prejudiced him because the State did not present overwhelming evidence he did not act in self-defense or defense of others and the State made a similar comment later in its closing argument. The State argues the circuit court did not abuse its discretion in overruling Defendant's objections because the arguments constituted commentary on the witnesses' credibility and whom the jury could choose to believe.

*Analysis*

"A prosecutor is allowed to argue the evidence and all reasonable inferences from the evidence during closing arguments." *State v. Minor*, 648 S.W.3d 721, 732 (Mo. banc 2022) (quoting *State v. Brown*, 337 S.W.3d 12, 14 (Mo. banc 2011)). "[A] prosecutor is allowed to comment on witnesses' credibility during closing argument." *State v. Campbell*, 600 S.W.3d 780,

6

794 (Mo. App. W.D. 2020) (quoting *State v. Chism*, 252 S.W.3d 178, 188 (Mo. App. W.D. 2008)). The prosecutor may also comment on the defendant's credibility. *State v. Vanlue*, 216 S.W.3d 729, 734 (Mo. App. S.D. 2007) (quoting *State v. Taylor*, 831 S.W.2d 266, 269 (Mo. App. E.D. 1992)). "Moreover[,] after a defendant has testified, it is not improper for the [State] in closing argument to comment regarding the lack of evidence supporting defendant's position." *Id.* at 734 (quoting *Taylor*, 831 S.W.2d at 269–70).

Defendant contends when a prosecutor argues a defendant has an obligation to prove something, the circuit court must sustain an objection based on improper burden shifting. To support his argument, Defendant cites *State v. Booker*, 945 S.W.2d 457 (Mo. App. W.D. 1997), and *State v. Copher*, 581 S.W.2d 59 (Mo. App. S.D. 1979). This Court finds Defendant's reliance on these cases misplaced. In *Booker*, the Western District found the prosecutor's argument the defendant could have requested a piece of evidence be tested, but did not, impermissibly shifted the burden of proof because the defendant "was not obligated to prove or to request anything" including requiring the evidence to be tested. *Booker*, 945 S.W.2d at 458. In *Copher*, the Southern District found the prosecutor's comments explicitly stating the defendant had to prove his mental state regarding the offense, by arguing, "Let me tell you what the defendant has to prove. This is what the defendant has to prove . . . . It's not up to the State to prove that he did know; it's up to the defendant to prove he did not know" impermissibly shifted the burden of proof. *Copher*, 581 S.W.2d at 61. In both of these cases, the prosecutors' express comments addressed the burden of proof regarding evidence testing and the defendant's mental state. By contrast, in this case, the prosecutor's comments simply asked the jury to make a credibility determination favoring its witnesses and disfavoring Defendant and Wife. This did not constitute commentary on Defendant's obligation to prove anything in contravention of the State's burden of proof.

7

This Court finds Defendant's case is more akin to *Campbell*, in which the defendant unsuccessfully argued the prosecutor's comments during rebuttal closing argument misstated the law and shifted the burden of proof during his first-degree rape trial. *Campbell*, 600 S.W.3d at 794. During the State's rebuttal closing argument, the prosecutor stated some of the defendant's witnesses' accounts corroborated the victim's account of the defendant's assault. The prosecutor then compared the defendant's account with the State's witnesses and argued, "To find him not guilty, you would really have to believe that [victim] made all of this up, and there is no credible evidence for that." *Id*. at 793. The Western District rejected the defendant's argument this comment shifted the burden of proof to him, finding the prosecutor's argument amounted to a comment on witness credibility, citing a collection of cases in which similar statements were reviewed and approved by appellate courts in other cases. *Id*., citing *State v. McClain*, 824 S.W.2d 103, 106 (Mo. App. E.D. 1992); *Chism*, 252 S.W.3d at 189; *Vanlue*, 216 S.W.3d at 733–35; and *Glass v. State*, 227 S.W.3d 463, 473 (Mo. banc 2007). As in *Campbell*, this Court finds "[t]he present case cannot be distinguished from this settled authority." *Campbell*, 600 S.W.3d at 794.

Even if this Court were to accept Defendant's position the prosecutor's comments impermissibly shifted the burden of proof, Defendant cannot demonstrate these comments had a decisive effect on the jury because the jury was instructed on the appropriate burden of proof to apply and its duty to judge the evidence submitted. *Vanlue*, 216 S.W.3d at 735. The record reveals the jury was instructed repeatedly regarding the State's burden of proof and how to assess witness credibility as recognized in the pertinent parts of these instructions. Jury Instruction No. 1 stated, "In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence. You may believe all, any part, or none of a witness's testimony." Jury Instruction No. 4 stated, "The defendant is presumed to be innocent, unless and

8

until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the [S]tate the burden of proof beyond a reasonable doubt that the defendant is guilty." Jury Instruction No. 5 stated, "The [S]tate has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense." Jury Instruction No. 6 stated, "The [S]tate has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful defense of [Wife and his children]." Jury Instruction No. 16 stated, "In deciding what the facts are, you must decide what testimony you believe and what testimony you do not believe. You may believe all, any part, or none of a witness's testimony. You must decide for yourselves whether to believe the testimony of a witness." The record reflects these instructions were given to the jury twice: once at the close of the evidence before closing argument and again after the court recessed for the weekend and the jury returned to begin deliberations the following Monday.

"A jury is presumed to follow the circuit court's instructions." *Minor*, 648 S.W.3d at 731. This presumption undermines Defendant's argument the prosecutor's comments foreclosed the possibility "of disbelieving each of the witnesses" or "believing large parts of each witness's testimony while disbelieving other parts of the testimony" when the jury was instructed twice it "may believe all, any part, or none of a witness's testimony." This presumption also refutes Defendant's argument the State shifted its burden when the jury was instructed three times the State bore the burden of proving Defendant's guilt, he did not act in self-defense, and he did not act in defense of others. The circuit court did not abuse its discretion in overruling Defendant's objections to the prosecutor's comments during closing argument asking the jury to make witness credibility determinations because they did not shift the burden of proof to Defendant.

Points I and II are denied.

9

**Conclusion**

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Renée Hardin-Tammons, J. concur.